James Drew PHILLIPS, Appellant,

v.

Nancy Jane PHILLIPS, Appellee.

No. 09–01–346 CV.

Court of Appeals of Texas, Beaumont.

Submitted March 13, 2002.

Delivered May 2, 2002.

Gary H. Gatlin, Jasper, for appellant.

John H. Seale, Seale, Stover, Bisbey & Morian, Jasper, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

James Drew Phillips appeals the final decree of divorce rendered by the trial court. Before us, James contends that the trial court abused its discretion in its division of the community estate of the parties, and that there was legally and factually insufficient evidence to support the trial court's division of the community estate. The record indicates that in her first amended petition for divorce, Nancy alleged insupportability as the only ground for divorce. *See* TEX. FAM.CODE ANN. § 6.001 (Vernon 1998). Immediately after alleging insupportability, the following sentence appears: "The conduct of the Respondent has amounted to fault causing the break-up of the marriage, and therefore Petitioner is entitled to a disproportionate part of the community property." We are faced with what appears to be an issue of first impression: May "fault causing the break-up of the marriage" be considered by the trial court in its "just and right" division of the estate of the parties, when the petitioner sought divorce *only* on grounds of insupportability?

Trial was to the court without a jury. Following rendition of the decree of di-

vorce, James filed a request for findings of fact and conclusions of law. Among the written findings of fact by the trial court, the following appears as finding number six: "The fault of Respondent James Drew Phillips caused the breakup of the marriage." James characterizes the testimony regarding his "fault" for the breakup of the marriage as "insignificant" so as to render the trial court's disproportionate award of the community estate to Nancy an abuse of discretion.

In a divorce proceeding, a trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party . . . ." TEX. FAM. CODE ANN. § 7.001 (Vernon 1998). It is error for a trial court to sever the issue of divorce from the issue of property division, and until the property of the parties has been disposed of, no final divorce judgment exists. *See Dawson–Austin v. Austin,* 968 S.W.2d 319, 324 (Tex.1998); *Vautrain v. Vautrain,* 646 S.W.2d 309, 316 (Tex.App.-Fort Worth 1983, writ dism'd). A trial court has broad discretion in making the division. *Schlueter v. Schlueter,* 975 S.W.2d 584, 589 (Tex.1998); *Murff v. Murff,* 615 S.W.2d 696, 698–99 (Tex.1981). A division of the community estate need not be equal, and the trial court may weigh many factors in reaching its decision. *Id.* Among these many factors is the "fault" of either of the parties for the breakup of the marriage, if pleaded. *Twyman v. Twyman,* 855 S.W.2d 619, 625 (Tex.1993). However, even where "fault" is properly pleaded and proved, an unequal division of the community estate may not be awarded to punish the party at "fault." *See Young v. Young,* 609 S.W.2d 758, 762 (Tex.1980); *In re Marriage of DeVine,* 869 S.W.2d 415, 428 (Tex.App.-Amarillo 1993, writ denied); *Smith v. Smith,* 836 S.W.2d 688, 693 (Tex. App.-Houston [1st Dist.] 1992, no writ).

As the reviewing court, we must presume that the trial court properly exercised its discretion, and we may not disturb the trial court's property division unless it clearly abused its discretion. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Bell v. Bell,* 513 S.W.2d 20, 22 (Tex.1974). A court abuses its discretion when it acts without reference to any guiding rules or principles, in other words, when the act is arbitrary or unreasonable. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). Under an abuse of discretion standard, legal and factual insufficiency are not independent, reversible grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *See Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991).

In the instant case, it is undisputed that the trial court awarded a disproportionate amount of the community estate to Nancy. Nancy contends the trial court properly awarded her approximately 60% of the community estate with the remaining 40% of the community estate going to James. In his brief, James contends that the division was even more lopsided in favor of Nancy and points out that he was awarded a mere 23.5% while Nancy was actually awarded 76.5%. Because the trial court entered a finding that James was at "fault" for the breakup of the marriage *and* awarded Nancy a disproportionate share of the community estate, we must initially examine whether the trial court abused its discretion in finding this fact before we move on to decide whether the trial court's ultimate property division was an abuse of discretion in violation of section 7.001 of the Family Code.

Nancy cites *Murff* in support of her contention that fault in the breakup of the marriage could be considered by the trial court in arriving at a "just and right" division of the community estate. We noted

as much above. However, we believe the facts of *Murff* along with its specific holding are distinguishable from those of the instant case. In *Murff,* the petitioner, Mrs. Murff, sought the divorce on *three grounds:* "no fault" insupportability, and alternatively, adultery and cruel treatment, both "fault" grounds." *Murff,* 615 S.W.2d at 697. Although the divorce decree itself did not specify upon what ground or grounds the trial court was granting Mrs. Murff the divorce, findings of fact were filed which indicated that she had proved grounds for the divorce "under all three alternative grounds." *Id.* On direct appeal, the court of civil appeals found abuse of discretion by the trial court in six areas, one of which was for considering "fault" of Mr. Murff to justify the disparity in division of the community estate. *Id.* In reversing the court of civil appeals, the Supreme Court held the following: .

> Mrs. Murff's first point of·error is that the court of civil appeals erred in holding that the trial court could not consider fault in the breakup of the marriage in arriving at a "just and right" division of the community estate. We sustain this point, having recently ruled on the same question in *Young v. Young,* 609 S.W.2d 758 (Tex.1980). We there held that in a divorce granted on a fault basis, the trial court may consider the fault of one spouse in breaking up the marriage when making a property division. In the instant case, the divorce was based upon both no-fault and fault grounds, thus *Young* is applicable. As we said in *Young,* however, "this does not mean that fault *must* be considered, only that it *may* be considered."

*Id.* at 698 (emphasis in original).

An examination of·*Young,* upon which the *Murff* Court relied, is also enlightening. Chief Justice Greenhill, writing for the Court, framed the pertinent issue as follows: "The second question is whether, in a divorce *granted* on a fault basis, the trial court may·consider·the fault of one spouse in breaking up the marriage when making a property ·division." *Young,* 609 S.W.2d at 759 (emphasis added). In *Young,* the trial court found that Mr. Young deserted Mrs. Young, leaving her with full care and responsibility of their physically disabled son, and entered a conclusion of law that Mr. Young "was guilty of cruel treatment toward [Mrs. Young]." *Id.* A further conclusion of law stated: "James L. Young's conduct [and] the disparity in the earning power of **JAMES L. YOUNG** and **LAURA L. YOUNG** are such that an unequal division of the property is just and right." *Id.* at 761. We set out the following portions from *Young* in which the Court discusses why "fault" was a proper consideration by the trial court in making its division of the parties' property:

> This divorce petition was based on all three traditional fault grounds and was granted to Laura on these grounds. The trial court entered a conclusion of law that James had been guilty of cruel treatment toward Laura. It also entered findings of fact, separate from the divorce decree and in the decree itself, related to James' adultery (including an affair and a putative marriage). The divorce decree itself states: "(t)he Court finds that Respondent deserted Petitioner, leaving her with full care and responsibility of the parties' adult child...."
>
> ....
>
> · The second reason given by the court of civil appeals in concluding that fault should not be considered is that fault does not ever lie totally with one spouse, and that consideration of fault would "require a trial judge to assess each and every bicker, nag and pout, as well as greater faults, of each spouse." [*Young*

*v. Young,*]594 S.W.2d [542]at 545[(Tex.Civ.App.-Dallas 1980)]. Again, we do not agree. We are not here concerned just with bickers, nags and pouts. Here, we have unchallenged findings of cruelty, adultery, and desertion. Both the Legislature and the courts have traditionally considered these to be "fault." In this situation, we agree with the trial court that fault may be a consideration to be weighed in the division of property. This does not mean that fault *must* be considered in all cases where a divorce is granted on fault grounds. Our holding is that it may be considered.

*Id.* at 761, 762.

In both *Murff* and *Young,* the trial court was presented with petitions alleging statutory grounds for divorce, with the petition in *Murff* containing the additional "no fault" ground of insupportability. In the instant case, Nancy alleged only insupportability as the ground for divorce. Her rather conclusory allegation of "fault" for the breakup of the marriage was tied to her request for a disproportionate award of the community estate. An examination of the testimony in the record before us with regard to the "fault" allegation indicates that Nancy had suspicions as to James' marital infidelity but no direct evidence, and rather weak circumstantial evidence, supporting such suspicions.[1] Furthermore, the decree of divorce is completely silent as to any rea-

son for the dissolution of the marriage, simply decreeing that the parties "are divorced, and the marriage between them is dissolved." The findings of fact and conclusions of law are equally silent as to the grounds on which the trial court found the marriage should be dissolved, with no mention of the alleged ground of insupportability.[2] As noted above, the trial court did find that the "fault" of James "caused the breakup of the marriage." It is clear to us that the substantive facts and holdings in both *Murff* and *Young* do not contemplate a case in which one or more *statutory* "fault" grounds for divorce are not at least pleaded and proved, yet the trial court nonetheless is permitted to consider "fault" in dividing the community estate.[3] This, in essence, is appellee's position with regard to her "fault" argument. As we appreciate the background of the promulgation of the Texas Family Code, such a position presents us with what appears to be a lack of consistency for both parties and practitioners of family law.

We find support for this observation in two cases which give us both historical and legal perspective as to marital dissolution law in Texas. We first examine *Cusack v. Cusack,* 491 S.W.2d 714 (Tex.Civ.App.-Corpus Christi 1973, writ dism'd). *Cusack* contains the following discussion of divorce law in Texas and the historical underpinnings of the Texas Family Code and the "no fault" ground:

1. If Nancy's intent was to make a case for adultery as the "fault" in question, the record evidence certainly does not support such a case. "Adultery," as used in divorce proceedings, means the voluntary sexual intercourse of a married person with one not the husband or wife of the offender. *Bell v. Bell,* 540 S.W.2d 432, 435 (Tex.Civ.App.-Houston [1st Dist.] 1976, no writ).

2. Conclusion of Law number three states: "All legal prerequisites to the granting of the

divorce have been met." As neither party complains of the inadequacy of either the decree or the findings of fact and conclusions of law, we comment no further.

3. The traditional "fault" grounds of "cruelty," "adultery," "conviction of felony," and "abandonment" are found in Tex. Fam.Code Ann. §§ 6.002, 6.003, 6.004, 6.005 (Vernon 1998).

Until 1913, the only grounds for divorce in Texas were cruelty, adultery, abandonment and conviction of felony. All were fault grounds. In that year (1913), living apart without cohabitation for ten years, a non-fault ground, was added. In 1941, insanity, another non-fault ground, became a ground for divorce. Subsequently, the period of living apart without cohabitation was reduced from ten to seven years (1953), and from seven to three years (1967). The ground of insanity was eliminated and mental illness was substituted therefor in 1965.

Until 1969, except for the above noted legislative enactments, Texas legislation on grounds for divorce remained virtually unchanged for over a hundred years. The adversary nature of divorce litigation remained, and ancient ecclesiastical grounds for separation based upon fault formed the core of substantive divorce law. If the conduct complained about did not fit into one of these statutory grounds, a divorce was denied. Adultery was an absolute bar to a divorce where the action was brought on one of the fault grounds. Other defenses to divorce actions were condonation, connivance, collusion and recrimination. As a result, some parties whose marriage had become insupportable could not obtain a divorce. It became apparent in the late 1960's that the existing grounds for divorce and the defenses thereto were no longer compatible with modern beliefs. 8 Houston Law Review, "Marriage and Divorce Under the Texas Family Code," pp. 100–136 (1970).

In keeping with the idea of a realistic marital code that would meet the needs of the twentieth century society, the Legislature, in 1969, enacted the Family Code, which became effective on January 1, 1970. A non-fault ground was added to the existing grounds for divorce. This new ground is found in § [3.01] of the Code, V.T.C.A., which reads, as follows:

> "On the petition of either party to a marriage, a divorce may be decreed without regard to fault if the marriage has become insupportable because of discord or conflict of personalities that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation."

The defense of recrimination was abolished by the Code and the defense of condonation was materially altered thereby. § 3.08, Family Code. Article 4630, Vernon's Ann. Civ. St., theretofore existing, was expressly repealed by the Code. The language in the repealed statute making adultery a bar against a suit for divorce does not appear in the Family Code.

*Id.* at 716–17. More to the point of our discussion was the *Cusack* Court's substantive analysis of the consequences of the legislature's enactment of the "no fault" insupportability ground in the context of the remaining traditional "fault" grounds of cruelty, adultery, abandonment, and felony conviction. We again reproduce the Court's excellent analysis of the effect of "no fault" insupportability in rocking the foundation of over one hundred years of divorce law in Texas:

> We construe § 3.01 of the Code to be a ground for a divorce which is separate and independent from any other grounds provided by the Code. That section of the Code is clear, plain and unambiguous. Since divorces are granted only on statutory grounds, and as the Legislature was fully aware of the grounds for divorce that existed in 1969, when the Family Code was passed, it must be presumed that the Legislature was not satisfied with the existing tradi-

tional grounds therefor. We conclude that it was the intent of the Legislature to make a decree of divorce *mandatory* when a party to the marriage alleges *insupportability* and the conditions of the statute are met, *regardless of who is at fault,* on the theory that society will be better served by terminating marriages which have ceased to exist in fact. The courts have no right or prerogative to add to or take from such a legislative enactment, *or to construe it in such a way as to make it meaningless.* As we view the Code, when insupportability is relied on as a ground for divorce by the complaining spouse, if that ground is established by the evidence, a divorce must be granted the complaining party, *without regard as to whether either, both or neither of the parties are responsible for or caused the insupportability. Stecklein v. Stecklein,* 466 S.W.2d 421 (Tex.Civ.App.-San Antonio 1971, n.w.h.). It is not incumbent upon the plaintiff who brings the divorce action upon the ground of insupportability to show any misconduct on the part of the defendant, but it is only incumbent upon that spouse to establish by the evidence that a state of insupportability exists regardless of whether it is anyone's or no one's fault. Otherwise, the grounds for divorce would remain the same as they were prior to the passage of the Code, and the new ground would be of negligible force. It also occurs to us that § 3.01 of the Code was incorporated therein as a new, independent and additional ground of divorce to render unnecessary the revealing to public gaze of sordid events that have come to mar two otherwise happy lives.

*Id.* at 717 (emphasis added).

Seized with the *"Zeitgeist"* regarding application of this "new, independent and additional ground of divorce," the Dallas Court handed down the case of *Baxla v.*

*Baxla,* 522 S.W.2d 736 (Tex.Civ.App.-Dallas 1975, no writ), *disapproved on other grounds by, Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 142 (Tex.1977). In *Baxla,* Mrs. Baxla's petition for divorce alleged the statutory language of insupportability. *Id.* at 737. She was granted the divorce by the trial court and Mr. Baxla appealed, contending insufficient evidence to support the insupportability allegation. *Id.* The *Baxla* Court initially pointed out that subsequent to the enactment of the Family Code in 1969, the legislature amended the Code to remove the following provision, formerly § 3.64: "The court shall base its decree for divorce or annulment on full and satisfactory evidence." *Baxla,* 522 S.W.2d at 737. Although Mr. Baxla recognized the apparent legislative intent to lessen the evidentiary burden in divorce proceedings, he continued to press the lack of sufficient testimony by Mrs. Baxla to prove insupportability. *Id.* In deciding the issue adversely to Mr. Baxla, the Dallas Court of Civil Appeals, much like the Corpus Christi Court of Civil Appeals in *Cusack,* began with a bit of background on how the "no fault" insupportability ground for divorce came to exist in Texas jurisprudence:

As a result of extensive reform movements in the 1960's, the Uniform Marriage and Divorce Act was drafted and various versions of this uniform act dealing with marriage breakdown as a ground for divorce have been adopted by thirty-two states. In 1971, [sic] Texas, while not adopting the Uniform Code entirely, enacted a portion thereof dealing with "no fault" divorce. Since the language used in the various statutes is new to divorce law there has not yet been time for much judicial interpretation of this language. It is, however, clear that the statutes have as their goal the abolition of fault as a requirement

for granting of divorces. It is also manifestly clear from the legislative history of many, if not all, of the statutes, that the purpose and intent of the legislatures of the various states, including Texas, is to abolish the necessity of presenting sordid and ugly details of conduct on the part of either spouse to the marriage in order to obtain a decree of divorce. For example, in California, evidence of misconduct or fault will not be permitted in the proceedings except when relevant to child custody determination. Cal.Civ.Code § 4509 (West Supp.1969). Thus, it has been said that in seeking to create a legal system which meets the realities of marital failure, legislators believed that *removing considerations of fault and eliminating the incentive to present fault evidence* would materially reduce the bitterness and acrimony which had attended divorce proceedings.

We agree with the writer of the U.C.L.A. Law Review article referred to in the margin, wherein it is stated:

> (T)he prima facie case for dissolution should be satisfied by the declaration of petitioner that he or she sincerely believes that the marriage has irreparably [b]roken down. Courtroom questions are expected to be brief and would go directly to petitioner's state of mind....
>
> Upon such testimony, dissolution should ordinarily be granted, unless the judge detects hesitancy on the part of the petitioner about the possibility of saving the marriage. In that case the judge may refer the spouses to conciliation counseling.

*Baxla,* 522 S.W.2d at 738 (emphasis added) (footnotes omitted).

▇ The legislative intent of adding the insupportability ground to Texas marriage dissolution law, as recognized in *Cusack* and *Baxla,* continues to find support in more recent case law. *See In re Marriage of Richards,* 991 S.W.2d 32, 37 (Tex.App.-Amarillo 1999, pet. dism'd). We, too, find that it was the intent of the legislature to make a decree of divorce *mandatory* when a party to the marriage alleges insupportability and establishes the statutory elements, *regardless of who is at fault. See id.* at 37–38; *Baxla,* 522 S.W.2d at 738–39; *Cusack,* 491 S.W.2d at 717. By reasonable and logical extension, the above finding permits us to hold that when dissolution of marriage is sought *solely* on the ground of insupportability, evidence of "fault" becomes irrelevant as an analytical construct and may not be considered by the trial court in its "just and right" division of the community estate.[4]

▇ As we noted above, a trial court has broad discretion in dividing the community estate in a divorce action. *Schlueter,* 975 S.W.2d at 589; *Murff,* 615 S.W.2d at 698. The trial court exercises this discretion by considering many factors. *Id.* at 699. Excluding the "fault" factor, the nonexclusive list includes the following: (1) the spouses' capacities and abilities, (2)

---

4. We recognize that when there are minor children of the marriage, a divorce petition must include a suit affecting the parent-child relationship (SAPCR). *See* Tex. Fam.Code Ann. §§ 6.406, 6.407 (Vernon 1998); *Brown v. Brown,* 917 S.W.2d 358, 361 (Tex.App.-El Paso 1996, no writ) (McClure, J., concurring). We also recognize that during a contested custody hearing, a variety of "sordid events" descriptive of one or both of the parents'/spouses' acts or omissions during the marriage may be elicited from witnesses. While such evidence would be relevant and proper so as to aid the factfinder in its ultimate decision of "best interest of the child," such "fault-like" evidence would still have no relevance to division of the community estate where the sole ground for divorce pleaded was insupportability.

business opportunities, (3) education, (4) relative physical conditions, (5) relative financial conditions and obligations, (6) disparity of ages, (7) sizes of separate estates, (8) the nature of the property, and (9) disparity in earning capacities or of incomes. *Id.* The trial court may also consider whether one of the parties to the marriage has wasted community assets. *See Schlueter,* 975 S.W.2d at 589; *Beard v. Beard,* 49 S.W.3d 40, 66 (Tex.App.-Waco 2001, pet. denied). The fact that there are ten "non-fault" factors, as well as the fact that the list is nonexclusive, should continue to give a trial court very broad discretion in making its "just and right" division notwithstanding our holding that where insupportability is the sole ground pleaded, a trial court may not factor in "fault" in its "just and right" division of the community estate in order to award a disproportionate quantity of the community estate to one spouse.

■ Nevertheless, even if, as in the instant case, the petitioner has failed to both plead and prove a traditional "fault" ground for dissolution of the marriage resulting in the trial court's erroneously attributing "fault in the breakup of the marriage" to the respondent, said respondent must still demonstrate that the trial court abused its discretion in making its ultimate "just and right" division of the community estate. *See Tate v. Tate,* 55 S.W.3d 1, 6 n. 3 (Tex.App.-El Paso 2000, no pet.); *Lindsey v. Lindsey,* 965 S.W.2d 589, 592 n. 3 (Tex.App.-El Paso 1998, no pet.). This is so because the trial court is still permitted to consider any other "non-fault" factor(s) in awarding a disproportionate amount of the community estate to one spouse.

■ In the instant case, James first complains of the trial court's apparent valuation of his retirement and Social Security on an equal footing with Nancy's retirement. During cross-examination by James' attorney, Nancy was asked if she thought the total amount of James' retirement and social security, approximately $45,608.64, was "an even wash" in comparison to her retirement total of approximately $70,000 at the time of trial. Nancy answered that she did consider it an "even wash" because, while both she and James worked the same number of years and both paid into retirement, she was required to pay the maximum amount into her teacher's retirement plan while James, being self-employed, chose not to pay into a retirement plan and always tried to minimize the amount he paid into Social Security. When cross-examined by Nancy's attorney, James admitted that tax returns during the years he was self-employed indicated that Nancy's income "was much greater" than James' year after year. James also admitted that during the time he was self-employed he did not attempt to put money aside for retirement but only contributed to Social Security based upon his earnings. On re-direct examination, James stated that he did not want the trial court to award him any of Nancy's retirement. James was willing to split his Social Security benefits with Nancy at the time he retired.

■ James further requested the trial court to award him the 134 acre parcel of land that had been purchased by James and Nancy from Nancy's parents for $90,000. The record indicated that the 134 acre tract was landlocked, as was another 7.5 acre tract which had been given to James and Nancy by Nancy's parents and upon which a house was built. When questioned about this, James acknowledged the dilemma facing him if he were awarded the 134 acre tract; he noted that he would have to get an easement from either Nancy's father or a Mr. Parker in order to access the 134 acre tract.

James also complains of the valuation by the trial court with regard to several "smaller" items (James' clothing, James' hearing aid, James' guns and gun equipment), as well as the valuation of the Woodville house. James also contends that the easement problem with regard to the Woodville house property [the 7.5 acre tract] and, by implication the 134 acre tract, was Nancy's fault as "said necessity [for an easement] being created by Appellee during the pendency of the divorce when Appellee had her children deed the property to Appellee's parents." This contention is not supported by the record evidence. While there was testimony that Nancy's parents deeded a 185 acre tract to both Nancy and James, later, during the pendency of the divorce, James agreed with Nancy to deed the 185 acre tract to their daughters. After this was done, the daughters deeded the 185 acre tract back to Nancy's parents. There is no evidence, however, that Nancy caused the daughters to deed the 185 acre tract back to their grandparents. Moreover, James acknowledged that in each instance when Nancy's parents deeded land to him and Nancy, Nancy's parents retained some rights to the property such as first right of refusal or right to any income or proceeds made off the property.

As can be seen, the valuation of the community estate was hotly contested by the parties. Both parties introduced a list consisting of various personal items and real property with each party's valuation included. Written appraisals were introduced on both the Tyler County house and the Jasper County house. As we appreciate the source of James' general complaint regarding the disproportionate award to Nancy, three areas emerge. The first is the fact that Nancy was awarded the 134 acre tract with an agreed value of $90,000. The second is the differ-

ence in the value urged by each party of the Tyler County house—Nancy's value being $84,420, and James' value being $111,000. James' complaint is not that the Tyler County house was awarded to Nancy, but that the valuation accepted by the trial court was too low. The third source of James' appellate complaint is with the trial court's apparent acceptance of Nancy's request to treat as an "even wash" any distinction between the value of Nancy's retirement and the value of James' retirement and Social Security.

With regard to the discrepancy in values of the Tyler County house, we find no abuse of discretion in using Nancy's valuation even though it is based upon an appraisal done about eight months prior to trial. The actual appraisal value was $88,000; however the appraiser noted three problems with the property: (1) the slab was cracked, (2) the property was landlocked, and (3) water spots were visible on the ceiling from a repaired roof leak. Nancy's testimony further explained that in addition to the three problems listed by the appraiser, the air conditioning and heating system in the house was inoperable. The cost to replace the whole system was $3,580. Nancy simply subtracted that amount from the total appraised value. We find no abuse of discretion by the trial court in using Nancy's valuation for the Tyler County house. Such a finding requires James' overall valuation of Nancy's portion of the community estate be reduced by $26,580.

We also find no abuse of discretion in the trial court's treatment of the retirement and Social Security issue. As mentioned above, the trial court may consider, among other things, the relative financial condition and disparity in earning capacities or of incomes in making a disproportionate award to one spouse. *Murff,* 615 S.W.2d at 699. In the instant

case, it was undisputed that while Nancy had worked as a teacher for twenty-nine years, her income at the time of trial was almost identical to that of James, who had been working for the Jasper school district in the capacity of Technology Director for four years at the time of trial. It would have been reasonable for the trial court to infer that James had the greater earning capacity as he had roughly the same salary as Nancy while having worked in his current job for only four years as compared to Nancy's twenty-nine years. Furthermore, as noted above, for the many years James was self-employed, he failed to put any money aside for retirement while Nancy had no choice but to contribute to retirement. We see no abuse of discretion in the trial court's valuation or treatment of the retirement and Social Security items.

Lastly, the award of the 134 acre tract to Nancy was also not an abuse of discretion. Again, another of the *Murff* factors the trial court may consider is the nature of the property involved. *Id.* The testimony indicated that the 134 acre tract was burdened with certain restrictions reserved by Nancy's parents. That was because Nancy's parents, the Boykins, were very interested that all of the property that was adjacent to the Boykins' property stay in the family. James fully acknowledged this to be true. James further acknowledged that, as a practical matter, he did not expect Mr. Boykins to give him [James] an easement over Boykins' land should James be awarded the 134 acres. The fact that James, subsequent to the filing of the divorce petition, fully agreed to deed away from his ownership a tract of land that would have provided the 134 acre tract with access to a public road could also have been a factor the trial court considered in failing to award the 134 acre tract to James. The fact that Nancy intended to make the Tyler County house her residence, with the Boykins nearby, could also have been seen by the trial court as a factor in awarding Nancy the 134 acre tract, since further problems could reasonably be anticipated if the trial court awarded James the tract.

 Under the entirety of the record evidence before us, we cannot say that the trial court clearly abused its discretion in awarding Nancy a disproportionate share of the community estate. The trial court's division of the community estate was neither arbitrary nor unreasonable. *Worford,* 801 S.W.2d at 109. James' two appellate issues are overruled. The trial court's decree of divorce will be affirmed.

AFFIRMED.

DAVID B. GAULTNEY, Justice.

### CONCURRING OPINION

I concur in the affirmance of the trial court's judgment. My disagreement is with the assertion that a trial judge has no discretion—under any circumstances, not just those at issue here—to consider conduct causing the divorce in making a just and right division of the property when a divorce is granted under section 6.001 of the Family Code. *See* TEX. FAM.CODE ANN. § 6.001 (Vernon 1998). I write separately because I believe a trial court should have discretion to consider proven fault.

Appellee pleaded fault as a basis for unequal division of the community property. Trial courts have wide discretion to consider a variety of factors in determining what is just and right in dividing community property. *See Schlueter v. Schlueter,* 975 S.W.2d 584, 589 (Tex.1998); *see* Barbara Anne Kazen, *Division of Property at the Time of Divorce,* 49 BAYLOR L.REV. 417, 424–28 (1997). For example, in affirming a 72.9% award of community property to a wife one court noted "[a] key factor was [the husband's] abusive and

violent nature, which ultimately contributed to the divorce." *Faram v. Gervitz–Faram,* 895 S.W.2d 839, 844 (Tex.App.-Fort Worth 1995, no writ). Similarly, in a divorce granted on grounds of insupportability, another court upheld the trial court's consideration of the fact that one spouse "was at fault in rendering the marriage insupportable." *Roberts v. Roberts,* 663 S.W.2d 75, 77 (Tex.App.-Waco 1983, no writ); *see prior case, Roberts v. Roberts,* 621 S.W.2d 835, 836 (Tex.App.-Waco 1981, no writ) (divorce granted on the ground the marriage was insupportable). *See also Vautrain v. Vautrain,* 646 S.W.2d 309, 312 (Tex.App.-Fort Worth 1983, writ dism'd) (trial court may consider evidence of fault even if divorce granted on no fault grounds); *Clay v. Clay,* 550 S.W.2d 730, 734 (Tex.Civ.App.-Houston [1st Dist.] 1977, no writ) (cruelty considered in dividing property, even when the trial court granted divorce on insupportability).

What is "just and right" in dividing the property should not depend on the ground on which the divorce is granted; the just and right division of property is separate from the dissolution issue. If one spouse's conduct causes the destruction of the financial benefits of a particular marriage, benefits on which the other spouse relied, a trial court should have discretion to consider that factor in dividing the community estate—regardless of the basis for granting the divorce.

DON BURGESS, Justice.

DISSENTING OPINION

I respectfully dissent. The majority finds the trial court erred in considering fault and I agree. They go on to hold the trial court did not abuse its discretion in

the division of the community estate.[1] I can not reach the same conclusion. It is clear, at least to me, the trial court considered fault in dividing the community estate. I say it is clear because it appears the trial court divided the estate according to Ms. Phillips's proposed division and accepted her assigned values totally. Therefore, I am forced to conclude that the error found by the majority probably caused the rendition of an improper judgment. TEX. R.APP. P. 44.1(a)(1). Consequently, I would reverse and remand for a new trial on the property division.

---

1. This court has approved unequal divisions, but these were not based upon an erroneous premise.