In the Matter of the MARRIAGE OF Donald BROWN and Darlene Brown.

No. 10–04–00273–CV.

Court of Appeals of Texas, Waco.

Jan. 25, 2006.

Donald Brown, Amarillo, pro se.

Bill Youngkin, Bryan, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

TOM GRAY, Chief Justice.

Donald R. Brown appeals the division of property made by the trial court. Because

the trial court abused its discretion in making the division, we reverse and remand.

### JURISDICTION

■ Darlene initially argues that this Court lacks jurisdiction over this case because Donald's notice of appeal was untimely. We disagree. The divorce decree was signed on August 28, 2003. On September 24, 2003, Donald sent a request to the trial court asking that the "proceeding be re-opened and the parties both be questioned as to the agreements reached, and by whom." This request, though not in lawyer's language, is a motion for new trial. Because the notice of the August 28, 2003 judgment was mailed, TEX.R. CIV. P. 306a(3), three days are added to the time period in which to timely file a motion for new trial, TEX.R. CIV. P. 21a, thus making the deadline for filing a motion for new trial September 30, 2003. The motion for new trial was received by the court on September 29, 2003. Because the motion was timely, it extends the time for Donald to file his notice of appeal to November 29, 2003. Donald's notice of appeal was file-stamped on November 13, 2003. His notice of appeal is, therefore, timely. This Court has jurisdiction to consider his appeal.

### DIVISION OF PROPERTY

Donald presents two issues on appeal. They are as follows:

## POINTS PRESENTED FOR REVIEW

### [POINT NUMBER ONE]

When a dissolution of marriage is sought solely on the grounds of insupportability, evidence of fault becomes irrelevant as anylytical [sic] and may not be considered by the trial court in its just and right division of the community estate.

### POINT NUMBER TWO

The trial court's division of the community estate awarding the wife 100% was arbitrary and unreasonable.

■ Donald's first point squarely presents the issue expressly left open by the Texas Supreme Court in *Young v. Young,* 609 S.W.2d 758, 761 (Tex.1980). The issue in *Young* was:

... whether the trial court may, in a fault-based divorce, consider the fault in breaking up the marriage as a factor in making a property division favoring one spouse.

*Id.* The Court went on to state it "is not necessary for us to express an opinion concerning the same issue in a 'no-fault' divorce, and we express none." *Id.* It is necessary for us to express an opinion on the very issue the Texas Supreme Court left open.

This Court has flirted with the issue in the past, but never squarely addressed it. When listing the factors a trial court may consider in making a just and right division of the community estate, we have included "benefits the innocent spouse would have received." *Roberts v. Roberts,* 663 S.W.2d 75, 77 (Tex.App.-Waco 1983, no pet.). By the use of the phrase "innocent spouse," the Court was necessarily referencing some allocation of fault in the break-up of the marriage.

Later, without any real analysis or discussion, a majority of this Court expressly listed "fault in the breakup of the marriage" as a factor the trial court could consider in making a just and right division of the community estate. *Smith v. Smith,* 143 S.W.3d 206, 213 (Tex.App.-Waco 2004, no pet.). "The factors most commonly used to support a disproportion-

ate community property division are fault and disparity in income, earning capacity, business opportunities, and education." *Id.*

The only Texas court, that we have found, which has expressly addressed the issue is Beaumont. *Phillips v. Phillips,* 75 S.W.3d 564 (Tex.App.-Beaumont 2002, no pet.). *Phillips* is a plurality decision. In the lead opinion, Chief Justice Walker opined that because the legislature has authorized no fault divorce, fault could no longer be considered in dividing the community estate. Chief Justice Walker stated:

> ... By reasonable and logical extension, the above finding permits us to hold that when dissolution of marriage is sought *solely* on the ground of insupportability, evidence of "fault" becomes irrelevant as an analytical construct and may not be considered by the trial court in its "just and right" division of the community estate.

*Id.* at 572. The lead opinion determined, however, that although the appellant had established error, the appellant had not established that the "trial court clearly abused its discretion in awarding Nancy a disproportionate share of the community estate. The trial court's division of the community estate was neither arbitrary nor unreasonable." *Id.* at 575.

In a concurring opinion, Justice Gaultney disagreed "with the assertion that a trial court has no discretion—under any circumstances, not just those at issue here—to consider conduct causing the divorce in making a just and right division of property when a divorce is granted under section 6.001 of the Family Code."

His analysis is as follows:

> Appellee pleaded fault as a basis for unequal division of the community property. Trial courts have wide discretion to consider a variety of factors in determining what is just and right in dividing

community property. *See Schlueter v. Schlueter,* 975 S.W.2d 584, 589 (Tex. 1998); *see* Barbara Anne Kazen, *Division of Property at the Time of Divorce,* 49 BAYLOR L.REV. 417, 424–28 (1997). For example, in affirming a 72.9% award of community property to a wife one court noted "[a] key factor was [the husband's] abusive and violent nature, which ultimately contributed to the divorce." *Faram v. Gervitz–Faram,* 895 S.W.2d 839, 844 (Tex.App.-Fort Worth 1995, no writ). Similarly, in a divorce granted on grounds of insupportability, another court upheld the trial court's consideration of the fact that one spouse "was at fault in rendering the marriage insupporatable." *Roberts v. Roberts,* 663 S.W.2d 75, 77 (Tex.App.-Waco 1983, no writ); *see prior case, Roberts v. Roberts,* 621 S.W.2d 835, 836 (Tex.App.-Waco, 1981, no writ) (divorce granted on the ground the marriage was insupportable). *See also Vautrain v. Vautrain,* 646 S.W.2d 309, 312 (Tex.App.-Fort Worth 1983, writ dism'd) (trial court may consider evidence of fault even if divorce granted on no fault grounds); *Clay v. Clay,* 550 S.W.2d 730, 734 (Tex. Civ.App.-Houston [1st Dist.] 1977, no writ) (cruelty considered in dividing property, even when the trial court granted divorce on insupportability).

> What is "just and right" in dividing the property should not depend on the ground on which the divorce is granted; the just and right division of property is separate from the dissolution issue. If one spouse's conduct causes the destruction of the financial benefits of a particular marriage, benefits on which the other spouse relied, a trial court should have discretion to consider that factor in dividing the community estate—regardless of the basis for granting the divorce.

*Id.* at 575–574.

In a dissenting opinion, Justice Burgess agreed with Chief Justice Walker that the

trial court could not consider fault in the community property division in a divorce granted on a no fault basis. He also concluded, contrary to the lead opinion, that the trial court's error in considering fault in the property division resulted in harm to the appellant. *Id.* at 576.

We agree with Justice Gaultney, that "a trial court should have discretion to consider proven fault" in the break-up of the marriage when making a just and right division of the community estate. *Id.* at 575. *See also Smith v. Smith,* 143 S.W.3d 206, 213 (Tex.App.-Waco 2004, no pet.). We overrule Donald's first issue.

## SECOND ISSUE

Donald's argument under his second issue is somewhat less focused than his first. He phrases the issue as follows: "The trial court's division of the community estate awarding the wife 100% was arbitrary and unreasonable." His overall summary of argument, however, frames the argument regarding his contention that the trial court's disproportionate division of the marital estate awarding 100% of the estate to Darlene was made without "reference to any guiding rules or principles" and without "due regard for the rights of each party. TEX. FAMILY C. § 7.001." Thus, he argues, the trial court's disproportionate division was an abuse of discretion.

As part of his argument, and Donald is representing himself on appeal, Donald "contends he was entitled to such a valuation [of the community estate] and further entitled to a share of the community assets given that he had spent all of thirty-five years loving, supporting, and contributing equally to their community." Donald believes a 50/50 division would be a just and right division. The trial court disagreed.

## THE PROCEDURE

In an extraordinarily unusual procedure, the trial court conducted a hearing, knowing that Donald had not received notice and was not present. The trial court heard testimony subject to the possibility that Donald might appear for a subsequent hearing once Donald had been properly notified. But the trial court took no action to have Donald brought to court. The trial court had denied Donald's request for a bench warrant. And the trial court did not use any other procedures to allow Donald to present evidence or to otherwise participate in the hearing while yet incarcerated. *See In re Taylor,* 28 S.W.3d 240, 249 (Tex.App.-Waco 2000, orig. proceeding). Donald raises no complaint about the procedure, and so, we do not address the propriety of it. *See In re Z.L.T.,* 124 S.W.3d 163, 166 (Tex.2003)(disapproving *Taylor* and other Courts of Appeals opinions to the extent that those opinions suggest the trial court has a duty to go beyond the bench warrant request and independently inquire into the necessity of an inmate's appearance). The trial court scheduled a subsequent hearing and notified Donald thereof. It is clear from the record the trial court did not expect Donald to appear or otherwise participate. Donald was in prison. *See Brown v. State,* 54 S.W.3d 930 (Tex.App.-Corpus Christi 2001, pet. ref'd).

## THE HEARING (WITHOUT NOTICE TO DONALD)

Darlene testified that Donald was three years into a 50 year sentence for "molestation of a child."

She provided the testimony necessary to prove up the divorce. She testified generally that during the marriage certain property had been accumulated, including a house, a car, home furnishings, and retirement benefits. She was willing to assume any and all debts that existed against the property.

She also testified about what she thought Donald might do with his share of

the marital estate if he received any property. This issue was of significance to his two adult children who testified that their mother should receive a disproportionate share of the community estate.

The adult daughter testified that she thought it was "a fair and reasonable disposition of the community assets" to award her mother, Darlene, the home, "the car, and retirement and stuff like that." She further testified this was necessary for "protection of the family estate."

The adult son likewise testified that he thought it was fair that "whatever is left now be awarded to her," Darlene. He felt "that this is necessary also to preserve the estate from maybe being conveyed away and/or given to some third person."

The trial court then asked Darlene about how Donald's representation in his criminal trial was paid for and how much it cost. Darlene did not know how much had been paid by Donald. She only knew she had paid $1,600 for something. The court and then counsel proceeded to question Darlene again about what Donald might do with any portion of the community estate awarded to him.

### THE RULING

In announcing his prospective decision, the court stated "that he's [Donald] used some significant hunk of money out of the community estate to defend that—although he may be entitled to it, it was still a guilty plea—and that he seems, from your testimony, to be only inclined to waste any money he can get out of the community estate now, because everything that you've testified to [about how he intends to spend his portion] sounds like a complete waste."

The property division rendered by the trial court awarded to Donald all the personal property he was in possession of. He is in prison. There was no testimony

he was in possession of any personal property.

He was also awarded all cash, retirement accounts, stocks and bonds, and insurance policies in his name. There was no testimony that any such items existed.

### THE LAW

 We do not write on a clean slate. This Court has held that the trial court errs in making a division of the community estate which is not supported by the evidence. In *Roberts,* we stated:

> . . . there was no evidence of the relative values of the properties awarded to the parties, and no evidence of the circumstances of the parties, upon which the division made might be justified. Since there was no evidence to support the determination that the division made was just and right, we hold the court abused its discretion in the matter.

*Roberts v. Roberts,* 621 S.W.2d 835, 838 (Tex.App.-Waco 1981, no pet.).

A majority of this Court has also stated that:

> . . . [b]ecause the debt owed by a spouse is a legally relevant factor in dividing the community estate, a trial court may abuse its discretion if it fails to consider such a factor. . . . The record does not disclose the amount of these debts, so the court could not have considered the amount of these debts in dividing the community estate . . . Although the court need not divide the community estate equally, a disproportionate division must be supported by some reasonable basis. . . . Having reviewed the record, we find no reasonable basis for the disproportionate division of the community assets and the liabilities of the parties.

*Smith v. Smith,* 143 S.W.3d 206, 214 (Tex. App.-Waco 2004, no pet.).

*APPLICATION*

Turning back to the evidence presented in this case, the testimony was very general about the community estate. The focus was on three primary reasons justifying a disproportionate division. Those three reasons were 1) fault in causing the divorce; 2) use of community estate assets to pay for Donald's criminal defense; and 3) Donald's lack of need versus the general financial situation in which Donald's criminal conduct had left Darlene.

In essence, with only a sketchy listing of community assets, no discussion of the net value thereof, and affirmatively considering how Donald intended to spend his portion of the community property estate, the trial court awarded all identified net assets to Darlene and nothing to Donald. The problem revealed by this record is that the trial court was not provided adequate information about what was being divided; the value of assets, outstanding debts, and other relevant considerations like Donald's total defense cost. Further, the trial court improperly considered the uses for which Donald was apparently going to spend his community share as opposed to how his intended uses may have reflected on his financial needs and circumstances. In essence, if he intends to "waste" it, he must not have a current financial need for it.

"Although the trial court need not divide the community property equally, a disproportionate division must be supported by some reasonable basis." *Smith v. Smith*, 143 S.W.3d 206, 214 (Tex.App.-Waco 2004, no pet.). We find the trial court abused its discretion in the property division. Donald's second issue is sustained.

CONCLUSION

We do not conclude that a just and right division could not result in this division, but rather, based upon this record, the trial court abused its discretion in awarding the entire net community estate to Darlene and nothing, or only de minimis assets, to Donald. The trial court's division of the community property estate is reversed and this case is remanded to the trial court for further proceedings consistent with this opinion.