Affirmed and Memorandum Opinion
filed June 16, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00057-CV



Adnan Ismik, Appellant 

v.

Ayse Ibrahimbas,
Appellee 



On Appeal from
the 308th District Court

Harris County, Texas

Trial Court
Cause No. 2008-46889



 

MEMORANDUM OPINION 

            In
this appeal from a final decree of divorce, appellant Adnan Ismik contends the
trial court abused its discretion by (1) dividing the community estate without
sufficient evidence of its value; (2) awarding a grossly disproportionate
division of the community estate; (3) refusing to allow appellant to introduce
evidence of adultery; and (4) refusing to rule on appellant’s breach of
contract and promissory estoppel claims.  For the reasons explained below, we
affirm.




I

            Ayse
Ibrahimbas (“Wife”) and Adnan Ismik (“Husband”) met on the Internet and were
married in Canada in May 2005.  They had no children.  In June 2006, they
separated, and Wife moved to Texas the following year.  In 2008, Wife filed for
divorce.  Among other things, she asked that all indebtedness that Husband had incurred
in her name be assessed against him.  Husband answered and filed a
counter-petition for divorce, in which he also asserted claims for breach of
contract and promissory estoppel based on a sponsorship agreement Wife signed
to enable Husband to immigrate to Canada.

            At
the divorce trial, Wife testified that she grew up in Turkey, and then moved to
Canada, where she obtained a master’s degree in petroleum geology.  Husband was
working on Wall Street in New York City when they met, and he agreed to move to
Canada because his job prospects were more flexible than hers.  After the
couple married, their relationship became difficult.  When they separated, Wife
went to Turkey for a couple of months to stay with her family and work on her
master’s thesis.  When she returned to Canada, she stayed with a friend, while Husband
continued to live in the house they had shared.  She later accepted a job offer
from ExxonMobil and moved to London.  After that, Wife and Husband tried to
reconcile, but their attempts were ultimately unsuccessful.

            In
2007, during one of Husband’s trips to London to see Wife, Husband persuaded
her to let him invest $50,000 that she had earned from ExxonMobil.  Not long
after that, their relationship deteriorated further and Wife asked for the
money back.  According to Wife, Husband initially agreed to return her money,
but he later refused.  Instead, Husband put the money in a TD Waterhouse investment
account in his name.  According to Husband, he put an additional $50,000 of his
own money in the account.  The money was used to invest in an energy company.  Husband
also borrowed money on margin to buy additional shares of the company.  Unfortunately,
when the stock market declined in 2008, the shares lost value and TD Waterhouse
issued one or more margin calls.  Wife testified that she did not know that Husband
was investing on margin.

            In
October 2008, Wife obtained her credit report and discovered several credit-card
debts totaling about $50,000.  Although the accounts were in her name, Wife did
not recognize most of them, and she denied that she received any benefits from
them.  One of the accounts was opened in September 2008, after she had filed
for divorce.  She believed that Husband had fraudulently opened the accounts
without her authorization.  

            Wife
acknowledged signing the sponsorship agreement, and she acknowledged that under
the agreement she was obligated to sponsor Husband for three years.  It was
also her understanding that Husband was obligated to inform her if he needed
support, but he never did so.  She also believed that the $50,000 she gave Husband
exceeded any obligation of hers under the agreement, and she did not ask the
court to order him to pay it back.  Additionally, Wife believed that she
provided for Husband’s basic requirements while they lived together.

            Wife
also testified that she had a fifty-percent interest in a company, Osh
Enterprises LLC, which she and a business partner had recently started to sell
Turkish rugs in the United States.  She had invested about $50,000 in that
business.  On cross-examination, Wife admitted that her business partner in Osh
Enterprises was a friend of hers who was now her boyfriend.  Wife also acknowledged
transferring various sums of money from her account out of the country or to other
accounts, and she also wrote checks to herself and made cash withdrawals.  She
testified that she used this money to help support her family, for her living
expenses, and to make loans to friends, which were later repaid.

            Wife
denied that, when the stock market declined and TD Waterhouse issued a margin
call on Husband’s account, she agreed to allow Husband to borrow money to cover
the debt.  She also denied authorizing him to incur charges on credit cards in
her name.

            Husband,
called to testify by Wife, testified that he received a high-school diploma in
Turkey and a bachelor’s degree in business from the University of Missouri. 
After that, he moved to New York, where he obtained a master’s degree in
business administration in 2001.  Husband later worked as a foreign-exchange
market trader, where he earned about $70,000 per year.  He also started an
import and export company called Galaxy U.S.  Husband worked in the United
States under an H1B work authorization until he moved to Canada in 2005 with Wife
and became a permanent resident there.  He admitted he had no disabilities or
other physical conditions that would prevent him from being employed, and he
still lives in the residence he and Wife shared in Canada.  Husband also admitted
that he used the money Wife earned to support himself when they lived together.

            Husband
testified that Wife provided around $89,000 early in their marriage, including
the $50,000 he put in the TD Waterhouse account in his name.  Husband admitted signing
Wife’s name on credit-card accounts and checks, but asserted that she authorized
him to do so.  Husband acknowledged that he received thousands of dollars in
cash advances from credit cards and bank accounts in Wife’s name.  He testified
that all of the money went into his account at TD Waterhouse.  

            Concerning
the sponsorship agreement, Husband testified that the agreement obligates the
sponsor to provide for his basic needs, such as food, lodging, and medical
expenses.  He agreed that he did not apply for or receive public assistance in
Canada.  He also agreed that the sponsorship agreement obligates him to make an
effort to provide for his own basic requirements.  He admitted that he did not
work in Canada for four years.  But, since June 2009, he had been employed as
an economist at the Bank of Canada, making around $8,000 (Canadian) per month. 
Husband also acknowledged that, in his deposition, he had stated that he could
have made $300,000 a year if he were living in New York.  Husband also
testified that in 2006, he spent $5,000 on a two-week vacation in Cuba without Wife. 
He also went to Turkey in December 2006, and he made several trips to London in
2007 to see Wife.  He agreed that he was not destitute and had the money to
travel during this time.  

            On
cross-examination, Husband testified that he gave up his career to move to
Canada with Wife for her career and, as a result, he lost his immigration
status and ability to work in the United States.  He explained that to work in
the United States, an employer would have to sponsor him.  Husband also
testified that, due the financial crisis beginning in 2008, it was impossible
for him to find a job in the fields of banking and finance.  

            When
asked about the $50,000 Wife gave Husband to invest in the stock market, Husband
testified that he and Wife agreed to invest the money in the energy company. 
He explained that he also borrowed about $200,000 on margin to invest in the
company, and that Wife agreed to this.  However, when the financial crisis
struck, the investment lost its value and, in 2008, TD Waterhouse issued margin
calls.  In his inventory, Husband listed numerous loans or credit lines totaling
about $166,000, most of which, he testified, were used to pay down the margin
calls.  He also testified that he had Wife’s permission to use her credit cards
and sign her checks to pay the debts.

            Husband
stated that he had no idea Wife was sending thousands of dollars out of the
country by wire transfer, or that she had transferred money out of the country
for her business venture.  He also testified that, when the market crashed and
he was unable to find a job, he asked Wife for help, but she refused and he had
to borrow from credit cards and his family to pay his living expenses.  Husband
also denied that, before the investment in the oil company was made, Wife asked
for her money back; however, he admitted receiving an email in June 2007
requesting the return of her money.  Husband also admitted that all of the
accounts listed on Wife’s inventory as accounts Husband created in Wife’s name
without her knowledge were accounts he used to cover the margin account at TD
Waterhouse.  He further admitted that some of the withdrawals from her bank
account were made after Wife filed for divorce, but he testified that she
nevertheless gave him permission to make the withdrawals.

            At
the conclusion of the trial, the court granted the divorce, divided the
community estate according to Wife’s proposed property division, and awarded Wife
her attorney’s fees.  On October 6, 2009, the trial court signed the final
decree of divorce.  The trial court also signed findings of fact and
conclusions of law.  Husband moved for a new trial, which was not granted. 
This appeal followed.

II

A

            In
a divorce decree, the trial court divides the estate of
the parties “in a manner that the court deems just and right.”  Tex. Fam. Code. § 7.001.
 On appeal, we review the trial court’s division of community property for an
abuse of discretion.  Knight v. Knight, 301 S.W.3d 723, 728 (Tex. App.—Houston [14th Dist.]
2009, no pet.).  We presume that the trial court
properly used its discretion in dividing the community estate of the parties.  Zagorski v. Zagorski, 116 S.W.3d 309, 313 (Tex. App.—Houston
[14th Dist.] 2003, pet. denied) (op. on reh’g).  

            When
exercising its discretion in making a just and right division,
the trial court may consider numerous factors, including the
following:  (1) the spouses’ capacities and abilities; (2) benefits that the
party not at fault would have derived from the
continuation of the marriage; (3) business opportunities; (4) education; (5)
physical conditions of the parties; (6) the relative financial conditions and
obligations of the parties; (7) size of the separate estates; (8) the nature of
the property; and (9) disparities in earning capacities
and income.  Murff v. Murff, 615 S.W.2d 696, 699 (Tex. 1981).
 The trial court may also consider the wasting of community assets.  Schlueter v. Schlueter, 975 S.W.2d 584, 589 (Tex. 1998).

            To
prove that the trial court abused its discretion, the appellant must
demonstrate from the evidence in the record that the division was manifestly
unjust and unfair.  Evans v. Evans, 14 S.W.3d 343, 345–46 (Tex.
App.—Houston [14th Dist.] 2000, no pet.).  The trial court’s ultimate division
need not be equal as long as it is equitable.  Zieba v. Martin, 928 S.W.2d 782, 790 (Tex. App.—Houston
[14th Dist.) 1996, no writ) (op. on reh’g).  The
trial court does not abuse its discretion when it bases its decision on
conflicting evidence or when some evidence of a probative and substantive
character exists to support the division.  Id. at 787.  

B

            In
his first issue, Husband contends the trial court abused its discretion because
it did not have sufficient evidence of the value of the community estate to
render an equitable division.  Specifically, Husband complains that Wife never introduced
into evidence the value of the credit-card debts, which she claimed Husband
fraudulently incurred and which Husband was ordered to assume.  Although Wife’s
inventory and credit report were admitted into evidence, Husband argues that Wife’s
inventory provides no specific values for the debts and there is no way for the
court to match the debts listed in her inventory to the credit-card debts
described in her credit report.  Husband cites In re Brown, 187 S.W.3d
143, 148 (Tex. App.—Waco 2006, no pet.), as his primary support for the
assertion that the trial court abuses its discretion when it divides the
community assets without adequate information about the value of the assets.

            In
Brown, the wife presented very little evidence concerning the value of
the community estate, and the husband was unable to participate in the divorce trial
because he was incarcerated.  Id. at 146–47.  The trial court divided
the community estate “with only a sketchy listing of community assets” and no
discussion of the net value of those assets.  Id. at 148.  The Brown
court reversed and remanded the trial court’s division of the community estate,
concluding that on the record before it, the trial court abused its discretion
in awarding “the entire net community estate to [the wife] and nothing, or only
de minimis assets, to [the husband].”  Id.  

            Brown
is distinguishable, however, because in this case both parties testified
concerning the assigned debts and there is evidence supporting the amounts owed
on those debts.  Husband appears to contend that the numbers accompanying the
credit cards listed are the last digits of the cards’ account numbers, but the
evidence shows these numbers reflect the amounts owed on each account in
Canadian dollars.  In her inventory, Wife listed seven accounts as “debts . . .
created by [Husband] in the name of [Wife] without her knowledge and in a
fraudulent manner.”  Next to each account name is a number and the currency
code “CAD.”  This same account information appears in Wife’s proposed property
division.  The credit report also reflects the amounts owed on various accounts
at the time the report was prepared.  Wife testified that she did not authorize
Husband to open or charge debts to those accounts.  Further, Husband admitted
that he used all of these accounts listed on Wife’s proposed property division to
cover his margin account.  

            Because
there is evidence supporting the amounts of the debts and a reasonable basis
for the trial court’s division of the debts, the trial court did not abuse its
discretion in awarding the debts on these accounts to Husband.  See Taylor v. Taylor, 680 S.W.2d 645, 648 (Tex. App.—Beaumont
1984, writ ref’d n.r.e.) (trial court has authority to
order the payment or disposition of the community debts in its consideration
and to determine of the division of the community estate).  We overrule
Husband’s first issue.

C

            In
his second issue, Husband contends the trial court awarded a grossly
disproportionate division of the community estate equating to Wife being
awarded one-hundred percent of the community assets and Husband being awarded ninety-six
percent of the ascertainable community debts.  Husband contends that the awards
are disproportionate because the evidence showed that Wife had a higher earning
capacity both during and after their marriage, as well as greater business
opportunities, capacities, and abilities.  Husband also points to his testimony
that he did not have the ability to work in Canada during the first few years
of the marriage and that he lost his immigration work status when he moved from
New York to Canada.  If anything, Husband argues, the evidence supports an
inequitable division in his favor.  

            Husband
also argues that the trial court abused its discretion in finding fraud as a
factor in its disproportionate award of the community estate, pointing to Wife’s
testimony that she transferred large sums of money to Turkey, she gave $50,000
to her boyfriend to start a rug business, and she sold her Honda CRV for
$19,000 without Husband’s knowledge.[1] 
But Husband’s complaint ignores the evidence supporting the trial court’s
findings.  In its findings of fact and conclusions of law, the trial court
specifically found that Husband fraudulently created debts in Wife’s name
without her knowledge or consent and engaged in improper conduct, including
creating liabilities and shifting indebtedness to Wife.  Although Husband
testified that Wife gave him the authority to access her accounts and that he
used the money to pay down the margin account with her permission, the trial
court could have disbelieved Husband’s testimony and accepted Wife’s testimony
that Husband opened accounts in her name and accessed her accounts without her
knowledge or authorization.  See Murff, 615 S.W.2d at 700 (trial court has the
opportunity to observe the parties’ testimony and determine their credibility).
 The trial court also could have accepted Wife’s explanation for the transfers
of funds and the sale of the Honda.  Because there is evidence supporting the
trial court’s findings, the trial court did not abuse its discretion in
awarding the debts Husband’s actions caused Wife to incur.  

            Husband
does not explain how he reached his calculation of the trial court’s “grossly
disproportionate” division of the community estate, and it is not immediately
apparent from the record.  However, other than the debts the trial court found Husband
fraudulently incurred in Wife’s name and Husband’s own debts incurred since the
marriage, the parties were each awarded the property, accounts, and cash in
their possession, their employment benefits, if any, and a vehicle.[2]  Wife was
also awarded the entirety of her interest in Osh Enterprises and her attorney’s
fees.  In making this division, the trial court had before it the evidence of the
parties’ relationship, Husband’s and Wife’s educational backgrounds and
employment opportunities, the evidence of the parties’ lifestyles and work
histories, and perhaps most significantly, the evidence supporting the trial
court’s findings that Husband incurred numerous debts in his own name and in Wife’s
name without her knowledge or authorization.  On this record, we cannot say
that the trial court abused its discretion when it divided the community estate
to award those debts to Husband.      We therefore overrule Husband’s second
issue.

III

            In
his third issue, Husband contends the trial court abused its discretion by
refusing to allow him to introduce evidence of Wife’s adultery when he pleaded
fault in the breakup of the marriage as a factor for the court to consider in
determining an inequitable division of the community estate.  Specifically, Husband
contends Wife admitted to having a boyfriend and admitted to providing $50,000
out of the community estate to create a business with her boyfriend.  We review
a trial court’s decision to exclude testimony under the abuse-of-discretion
standard.  Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 906
(Tex. 2000).  

            Although
Husband contends the trial court prevented him from presenting evidence of Wife’s
alleged adultery, Husband does not identify what additional evidence he was
prevented from presenting, and he made no offer of proof or bill of exception for
this court to review.  Generally, to adequately and effectively preserve error,
a party complaining that evidence was improperly excluded must make an offer of
proof that shows the nature of the evidence specifically enough so that the
reviewing court can determine its admissibility.  See Tex. R. Evid.
103(a)(2); In re N.R.C., 94 S.W.3d 799, 806 (Tex. App.—Houston [14th
Dist.] 2002, pet. denied).  Therefore, Husband’s complaint is not preserved for
review.  See Smith v. Smith, 143 S.W.3d 206, 211 (Tex. App.—Waco 2004,
no pet.) (complaint that evidence was erroneously excluded was not preserved
for review when appellant did not make an offer of proof or file a formal bill
of exception and substance of the evidence was not apparent from the record).

            Even
if the trial court erred in its evidentiary ruling, however, we reverse only if
the error probably caused the rendition of an improper judgment.  See
Tex. R. App. P. 44.1; Owens-Corning Fiberglas Corp. v. Malone, 972
S.W.2d 35, 43 (Tex. 1998).  Husband argues a factor such as adultery “could
have swayed the trial court to order a more equitable division of the community
estate.”  But Husband does not argue or demonstrate that the trial court’s
ruling probably caused the rendition of an improper judgment.  Further, as Husband
acknowledges, the trial court had before it Wife’s admission that she had a
boyfriend with whom she invested in a business.  On these facts, we cannot say
that the exclusion of evidence probably caused the rendition of an improper
judgment.  We overrule Husband’s third issue.

IV

            In
his fourth issue, Husband contends the trial court abused its discretion by
refusing to rule on his breach-of-contract and promissory-estoppel claims,
which arose out of the sponsorship contract Wife signed to facilitate Husband’s
immigration to Canada.  But Husband is incorrect that the trial court refused
to rule on these claims.  In the final decree of divorce, signed after a trial
on the merits, the trial court ruled that “all relief requested in this case
and not expressly granted is denied.”[3] 
Thus, the trial court could not have abused its discretion by failing to rule,
because it did rule.  See Moritz v. Preiss, 121 S.W.3d 715, 718–19 (Tex.
2003) (reaffirming the finality presumption for judgments rendered after a full
trial on the merits); Lehmann v. Har-Con Corp., 39 S.W.3d 191, 201 (Tex.
2001) (“After a full trial on the merits, the statement in a judgment that all
relief not requested is denied signifies finality; there is no expectation that
the court tried only part of the case, absent an order for severance or
separate trials.”).  There is nothing in the record to indicate that the trial
court did not intend the judgment to finally dispose of the entire case.  See
Moritz, 121 S.W.3d at 719.  Moreover, given the evidence before it, the
trial court could have reasonably concluded that Husband’s claims were without
merit.  We overrule Husband’s fourth issue.

*
* *

            Having
overruled Husband’s issues, we affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson,
Brown, and Christopher.









[1]
In her testimony, Wife stated that she sold the Honda and bought a Range Rover
so that she could use it for her rug business.  She also testified that she was
unaware that Husband had purchased a 2009 Acura until she received paperwork
from Husband’s insurance company insuring the vehicle.





[2]
Additionally, Wife contends that Husband actually received the largest
community asset—an apartment in Turkey valued at 100,000 euros—and therefore
the claim that the award was disproportionate is meritless.  Although an
apartment in Turkey is not specifically identified in the divorce decree, Wife
listed it in her proposed property division as an asset to be awarded to Husband,
and she testified that Husband told her he purchased the property in 2007 and
that it was worth 100,000 euros, or $147,210.  Husband denied that he owned any
property in Turkey and he testified that he never told Wife that he did.  The
trial court, however, could have believed Wife’s testimony over Husband’s
testimony and, consistent with Wife’s property division, awarded the apartment
to him.





[3]
Further, in his motion for new trial, Husband did not assert that the trial
court refused to rule on his claims; instead, he asserted that the evidence was
legally and factually insufficient to support the trial court’s judgment “not
award[ing] damages due to [p]etitioner’s breach of contract of [r]espondent’s
Canadian [s]ponsorship [a]greement.”  Husband also asserted that the trial
court abused its discretion “in denying [r]espondent’s breach[-]of[-]contract
claim.”