Affirmed and Memorandum Opinion filed October 23, 2007








Affirmed and Memorandum Opinion filed October 23, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00056-CV

____________

 

CHANDER MOHINDRA, Appellant

 

V.

 

SUDHA MOHINDRA, Appellee

 



 

On Appeal from the 246th
District Court

Harris County, Texas

Trial Court Cause No. 2005-18555

 



 

M E M O R A N D U M   O P I N I O N

In this appeal from a final decree of divorce, Chander
Mohindra appeals the trial court=s division of
community property and award of future earnings from his 401K and IRA
accounts.  For the reasons stated below, we affirm.








Factual
and Procedural Background

Chander Mohindra and Sudha Mohindra were married on January
20, 1974, and remained married for 31 years before separating in March 2005. 
They had two children, both of whom were over 18 years old at the time of the
divorce.  In her original petition for divorce, Sudha alleged that the marriage
had become unsupportable because of discord or conflict of personalities.  In
an amended petition, she also alleged cruel treatment by Chander and requested
a disproportionate share of the parties= estate for the
following reasons:  fault, lost benefits of marriage, wasting of community
assets, reimbursement, attorney=s fees, and creation of community
property.  Chander answered with a general denial and requested attorney=s fees.

After a bench trial, the court issued its Final Decree of
Divorce.  In the decree, issued on December 27, 2005, the trial court ordered
that the marriage was dissolved Awithout regard to
fault.@  It is undisputed
that the parties= community property was disproportionately
divided.[1] 
Included in the property division were two retirement accounts at issue hereCa Vanguard 401K
account and Merrill Lynch IRA accountCset out as
follows:

A portion of CHANDER M. MOHINDRA=s benefits in the Vanguard Group
401K, Plan No. 095555, that portion being the sum of $204,020.00 plus 50% of
any amount over the full value of $408,039.00 in the account together with any
interest, dividends, gains or losses on that amount arising since that date and
more particularly defined in a Qualified Domestic Relations Order signed by the
Court.         

* * *








A portion of the Merrill Lynch IRRA
[sic] account number 443-82F69, that portion being $210,000.00 plus 50% of any
amount over the full value of $419,440.00, in the name of Chander Mohindra.

Chander moved for a new trial, asserting that the division
of property was manifestly wrong and unjust.  Chander also requested findings
of fact and conclusions of law, but the trial court did not enter any findings
or conclusions.  The record does not reflect that Chander filed a notice of
past due findings of fact and conclusions of law.  The motion for new trial was
overruled by operation of law, and this appeal followed.

Analysis
of Chander=s Issues

1.       Did the
Trial Court Abuse Its Discretion by Disproportionately Awarding Community
Property in Favor of Sudha?

In his first issue, Chander contends that the trial court
abused its discretion by dividing the community property in a manner that was
not just or equitable, and that the division is not supported by evidence. 
According to Chander, the evidence favors a disproportionate division in his
favor because of his lower earning capacity and physical disabilities.

a.       Applicable
Law and Standard of Review

In a divorce decree, the trial court Ashall order a
division of the estate of the parties in a manner that the court deems just and
right, having due regard for the rights of each party and any children of the
marriage.@  Tex. Fam.
Code ' 7.001.  The trial court has wide discretion in
dividing the marital estate of the parties.  Jacobs v. Jacobs, 687
S.W.2d 731, 733 (Tex.1985).  It is presumed that the trial court exercised its
discretion properly, and the division will not be disturbed on appeal unless a
clear abuse of discretion is shown.  Murff v. Murff, 615 S.W.2d 696, 698B99 (Tex. 1981). 
The trial court=s ultimate division need not be equal as
long as it is equitable.  Zieba v. Martin, 928 S.W.2d 782, 790 Tex. App.CHouston [14th Dist.]
1996, no writ) (op. on reh=g).  Thus, the trial court must have some
reasonable basis for an unequal division of the property.  Id.  








In exercising its discretion, the trial court may consider
many factors, including a disparity of incomes or of earning capacities, the
spouses= capacities and
abilities, benefits which the party not at fault would have derived from
continuation of the marriage, business opportunities, education, relative
physical conditions, relative financial condition and obligations, disparity of
ages, size of separate estates, and the nature of the property.  Murff,
615 S.W.2d at 699.  The trial court may also consider the wasting of community
assets.  Schlueter v. Schlueter, 975 S.W.2d 584, 589 (Tex. 1998).  The
circumstances of each marriage dictate what factors should be considered in the
property division upon divorce.  Young v. Young, 609 S.W.2d 758, 761
(Tex. 1980).  A trial court does not abuse its discretion when it bases its
decision on conflicting evidence or when there is some evidence of a
substantial and probative character to support the division of the property.  Zieba,
928 S.W.2d at 787.  The appellant bears the burden of showing that the trial
court=s abuse of
discretion caused a division of property so disproportionate that it is
manifestly unjust and unfair.  See Hedtke v. Hedtke, 112 Tex. 404, 248
S.W. 21, 23 (Tex. 1923).

b.       No Abuse
of Discretion Shown

Chander first argues that, because the trial court granted
the divorce without regard to fault, any fault on Chander=s part is not to
be considered in the division of the community estate.  For this proposition,
Chander cites O=Carolan v. Hopper, 71 S.W.3d 529
(Tex. App.CAustin 2002, no pet.).  However, the court in that
case did not hold that fault could never be considered in the context of a
no-fault divorce; it merely concluded that fault was not considered in the
trial court=s property division in that case because conflicting
evidence of fault was presented and the divorce was granted on no-fault
grounds.  Id. at 533 n.4.[2]








In the absence of findings of fact, we do not know if the
trial court actually considered evidence of fault on Chander=s part in making
its property division.  However, fault is recognized as a factor that trial
courts may consider when dividing community property.  See Murff, 615
S.W.2d at 698; Young, 609 S.W.2d at 762; Janik v. Janik, 634
S.W.2d 323, 324B25 (Tex. App.CHouston [14th
Dist.] 1982, no writ).  Courts, including this one, have acknowledged that
fault may be considered even in the context of a no-fault divorce.  See In
re Marriage of Brown, 187 S.W.3d 143, 146 (Tex. App.CWaco 2006, no
pet.) (holding that trial court had discretion to consider proven fault in
break-up of marriage sought solely on grounds of insupportability); Bishop
v. Bishop, No. 14-02-00132-CV, 2003 WL 21229476, at *3 (Tex. App.CHouston [14th Dist.]
2003, no pet.) (mem op.) (stating that it was within the trial court=s discretion to
consider fault in dividing the parties=s community estate
even when a no-fault divorce is granted); see also Vautrain v. Vautrain,
646 S.W.2d 309, 312 (Tex. App.CFort Worth 1983, writ dism=d) (AIt is
discretionary with the court, once it decides to hear the divorce on the ground
of the no fault basis, as to whether or not he shall consider the matter of
fault involved in the divorce case.@); Clay v. Clay,
550 S.W.2d 730, 734 (Tex. Civ. App.CHouston [1st
Dist.] 1977, no writ) (noting that trial court was authorized to consider jury=s finding that
wife=s conduct toward
husband constituted cruel treatment in dividing the parties= estate when
divorce was granted on no-fault grounds). 








Here, Sudha testified that she endured verbal and emotional
abuse throughout the marriage, and at least one incident of physical abuse. 
She testified that the abuse sometimes caused her to be unable to work or
function.  Further, Sudha testified that she did not feel financially or
emotionally supported by Chander, and she received no nurturing or caring from
him.  Chander denied abusing or being cruel to Sudha, and testified that he
treated her with respect.  However, there was also testimony that the Mohindra
family=s home life had
been Achaotic@ and that the home
was a bad environment for the children.  Chander acknowledged that he was
alienated from his wife and son (not their daughter), but took no
responsibility for any alienation, instead blaming it all on Sudha.  As the
sole judge of witness credibility, the trial court could have reasonably
disbelieved Chander and believed Sudha.  See Murff, 615 S.W.2d at 700
(noting that the trial court in a divorce case has the opportunity to observe
the parties on the witness stand and determine their credibility); see also
City of Keller v. Wilson, 168 S.W.3d 802, 819 (Tex. 2005) (reviewing court
cannot impose its own opinions of the credibility of witnesses and weight to
give their testimony contrary to those of the fact finder).  However, even if
we exclude this evidence from consideration, there remains ample evidence to
support the trial court=s unequal division of the community
estate.  

Chander contends that various factors not only fail to
support the trial court=s unequal division in Sudha=s favor, they
favor a disproportionate award in his favor.  Primarily, Chander points to evidence
that Sudha, who has a master=s degree in chemistry, has worked at Shell
for 18 years and earns an annual salary of $62,500.  In contrast, Chander was
let go from his accounting position at Texaco in 2001 with a severance package
of approximately $178,000, and the only income he has earned in the last two
years was $1,489 as a part-time consultant.  Chander contends that he has not
worked since 2001 because he had open heart surgery in 2002 and has other
health problems and medical expenses.  Sudha, by comparison, is four years
younger than Chander and testified that she intended to continue working. 
Consequently, Chander contends, his opportunities to continue to work and earn
money are more limited than Sudha=s.  








Chander further contends that at least an equal division of
the property is supported by the relative lack of community debt and the Afairly equivalent@ value of the
parties= separate
property.  Chander also argues that the cash and investment accounts, which
comprise the majority of the community estate, were readily divisible Ain kind,@ and so the trial
court should have divided them equally.  Moreover, given the size of that
portion of the community estate, adjustments for the value of other assets not
divisible in kind, such as the house and cars, as well as his interest in Sudha=s pension fund,
could have been apportioned to provide equal value to him without impacting
Sudha=s interest.[3]

Other evidence, however, supports the trial court=s unequal
division.  Concerning Chander=s health and ability to work, Chander
presented no evidence that he was unable to maintain employment as a result of
any health problems.  To the contrary, Chander testified that he did not want
to go back to work after he was let go from Texaco because he had his severance
pay and wanted to take care of his health problems.  He admitted that once the
divorce was finished, he would go back to work.[4] 
Chander also admitted that nothing in his termination papers from Texaco
prohibited him from going back to work, and he could have worked and earned
money during the roughly three and one-half years he was unemployed.  Chander=s education and
training is roughly equivalent to Sudha=s, as he was
educated in England as an accountant and is a C.P.A.  Additionally, the record
reveals that both parties have had health issues, as Sudha had previously twice
battled cancer.








Evidence was also presented that Chander had wasted or
secreted community assets totaling hundreds of thousands of dollars.[5] 
Money was periodically withdrawn from various retirement accounts over time,
and was spent by Chander.  As one example, Sudha testified that there had been
a direct rollover into a Mellon Bank account in Chander=s name in the
amount of $163,459.92, and she had no knowledge of what happened to those
funds.  Sudha had been unaware of the Mellon Bank account, and it was not
included on Chander=s inventory.  Sudha also testified that
over $300,000 in four accounts had been wasted by Chander.  Additionally, the
funds in some accounts could not be traced because Chander apparently failed to
comply with discovery requests, and failed to appear for deposition.  Because
Sudha could not obtain information on the balances in some accounts, she had
requested that any amounts in the accounts over the amounts known to her be
divided 50/50. 

The trial court also could have considered the evidence of
the parties= needs and the nature of the property divided.  Sudha=s monthly expenses
were approximately $3,600, while Chander=s monthly
expenses, as provided on his financial information statement, were $2,260. 
Further, Sudha was awarded the family home (a non-liquid asset) and her own
retirement account, from which she could not presently withdraw funds, because
she was still working at Shell.  In contrast, Chander was awarded liquid assets
that he could invest or divest as desired.  

Given the evidence presented, we cannot say that the trial
court=s division of the
community estate was manifestly unjust or unfair.  We therefore overrule
Chander=s first issue.








2.       Does the
Division of Retirement Accounts Improperly Award Chander=s Future Earnings
to Sudha?

In his second issue, Chander contends that the trial court
abused its discretion by awarding Sudha half of any future earnings on the
Merrill Lynch IRA and the Vanguard 401K retirement accounts, because future
earnings are separate property not subject to division.  On this record, we
disagree.

Initially, we note that the record does not show that
Chander raised this issue in the trial court in his motion for new trial or
that he otherwise brought it to the trial court=s attention. 
Preservation of a complaint is a prerequisite for appellate court review.  Tex. R. App. P. 33.1(a).  Because
Chander failed to preserve his complaint below, we have nothing to review and
so overrule his issue.

But, even if we were to address Chander=s issue, he would
not prevail.  Post-divorce increases in the value of a person=s retirement plan
that are attributable to that person=s continued
employment, such as raises, promotions, services rendered, and post-divorce
contributions, are the individual=s separate
property and are not subject to division.  See Stavinoha v. Stavinoha,
126 S.W.3d 604, 610 (Tex. App.CHouston [14th Dist.] 2004, no pet.); Burchfield
v. Finch, 968 S.W.2d 422, 425 (Tex. App.CTexarkana 1998,
pet. denied).  But, post-divorce increases in value that are not attributable
to the person=s continued employment after divorce are community
property subject to division.  See Stavinoha, 126 S.W.3d at 610; Burchfield,
968 S.W.2d at 424.  








Here, Sudha was awarded 50% of any sum existing in the
retirement accounts as of the date of divorce, together with interest,
dividends, gains or losses on her 50% share of the accounts only.  Thus, post-divorce
increases in the value of Sudha=s share of the retirement accounts will
not be attributable to Chander=s post-divorce employment or to his
contributions of separate property to the plans, and so were subject to the
trial court=s just and right division.  See Tex. Fam. Code ' 7.001; Boyd v.
Boyd, 67 S.W.3d 398, 409B10 (Tex. App.CFort Worth 2002, 
no pet.) (holding trial court did not abuse its discretion in awarding wife 50%
of husband=s 401(k) plan when award did not include any interest
that would result from husband=s post-divorce employment or contributions
of his separate property).

We therefore overrule Chander=s second issue.

Conclusion

We overrule Chander=s issues and
affirm the trial court=s judgment.

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed October 23, 2007.

Panel consists of
Justices Yates, Fowler, and Guzman.

 

 









[1]  The parties disagree as to the percentage awarded
each.  According to Chander, although Sudha requested that the community
property be divided 55/45, Sudha was awarded 64.5% of the community estate
($906,788.00 out of $1,404,994.00 in assets).  Sudha responds that the trial
court=s division mirrors Sudha=s proposed division, except that the two retirement accounts at issue 
were divided 50/50.  Sudha also contends Chander=s division included Sudha=s
jewelry, which was not necessarily valued by the trial court, and does not take
into consideration the debts awarded to each party, including substantial
attorney=s fees owed by Sudha.





[2]  We have found only one case in which a court has
held that, in a no-fault divorce, evidence of fault may not be considered by
the trial court in making its just and right division of the community estate. 
See Phillips v. Phillips, 75 S.W.3d 564, 572 (Tex. App.CBeaumont 2002, no pet.).  





[3]  Chander cites two cases to support his contention
that the trial court abused its discretion in dividing the community property
disproportionately.  See O=Carolan v. Hopper, 71 S.W.3d
529 (Tex. App.CAustin 2002, no pet.); Zieba v. Martin, 928
S.W.2d 782 (Tex. App.CHouston [14th Dist.] 1996, no writ).  However, the
circumstances and evidence presented in those cases are not comparable to that
of the present case.  For example, in O=Carolan v. Hopper, the court reversed the trial court=s
disproportionately high award of community property to Hopper when it found Aa total absence of evidence@ to support the award.  71 S.W.3d at 532.  Among other
things, Hopper did not allege fault, the parties ages were roughly the same, O=Carolan had no separate estate, Hopper had a
significantly greater income, earning capacity, and business opportunities, and
O=Carolan suffered from a severe brain malformation that
impaired her future earning ability, while Hopper had no health problems.  Id.
at 532B33.  In Zieba v. Martin, this court reversed
the trial court=s disproportionately high award to Martin because the
evidence showed that the trial court did not order reimbursement for a
significant amount of community funds that were unaccounted for or that Martin
spent on paramours; other evidence showed that Martin=s separate estate was roughly three times greater than
Zieba=s, Zieba=s
earning capacity and business opportunities were limited in comparison to
Martin=s, Zieba was sole managing conservator of their child,
and Zieba presented uncontroverted testimony concerning three years of physical
and verbal abuse and evidence of Martin=s
infidelity.  928 S.W.2d at 790B91.





[4]  Sudha also testified that there was no reason
Chander could not work.





[5]  Chander denied Astealing@ any money, and testified that he
had accounted for every penny.  He also testified that he had increased the
family funds through investments.