**Affirmed and Memorandum Opinion filed July 24, 2012.**



**In The**

# Fourteenth Court of Appeals

**NO. 14-10-00629-CV**
_____

**CONNIE SUSAN WALSH, Appellant**

**V.**

**JAMES HENRY WALSH, Appellee**

**On Appeal from the 247th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2007-46926**

## MEMORANDUM OPINION

In this appeal from a divorce decree dissolving the marriage of appellant, Connie Susan Walsh ("Connie"), and appellee, James Henry Walsh ("James"), Connie challenges the trial court's division of the marital property. In her sole issue, Connie contends the trial court abused its discretion in its valuation of certain marital property. We affirm.

### I. BACKGROUND

After twenty years of marriage, James petitioned for divorce, and Connie filed a counter-petition. During the marriage, the parties acquired Cinnamon Valley Resort ("the resort"), which is located in Arkansas and includes two parcels of real property and

vacation cabins. The resort is owned by a corporation, and the spouses are the only shareholders and officers.

In October 2009, the trial court conducted a bench trial, during which the parties presented evidence regarding the value and proposed disposition of the resort, among other marital property. Consistent with their latest respective inventories, Connie contended the fair market value of the resort was $2,494,000 whereas James advanced a figure of $1,600,000. Connie requested that James be awarded the resort, although James testified he did not want this asset. James proposed that the trial court order the resort to be sold and the proceeds divided equally.

After hearing evidence, the trial court orally announced it granted the divorce and a rendition regarding the marital property would be forthcoming. In December 2009, the trial court issued a rendition. However, the trial court heard additional testimony in February 2010, after it was informed that Connie had sold or removed property awarded to James. Subsequently, the trial court issued a final rendition.

On April 14, 2010, the trial court signed a final divorce decree. The court ordered that the resort be sold with each spouse to receive half of the net proceeds and outlined requirements for the sales process. In its Findings of Fact and Conclusions of Law, the court found that the values of the marital assets are "as reflected in [James's] trial inventory," except for some of Connie's jewelry. Connie timely filed a motion for new trial and an amended motion for new trial. In a written order, the trial court denied Connie's "motion for new trial."

## II. ANALYSIS

In a divorce decree, the trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code Ann. § 7.001 (West 2006). The values of individual items "'are evidentiary to the ultimate issue of whether the trial court

divided the properties in a just and right manner.'" *Zeptner v. Zeptner*, 111 S.W.3d 727, 740 (Tex. App.—Fort Worth 2003, no pet.) (quoting *Finch v. Finch*, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1992, no writ)). The values of community assets are generally determined as of the date of divorce or as close to that date as possible. *Quijano v. Quijano*, 347 S.W.3d 345, 349 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

We review a trial court's division of marital property under an abuse-of-discretion standard. *Id.* To obtain reversal of a property division, an appellant must show that the trial court clearly abused its discretion by rendering a division or an order that is manifestly unjust and unfair. *Id.* A trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Swaab v. Swaab*, 282 S.W.3d 519, 524 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd w.o.j.). Legal and factual sufficiency of the evidence are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Quijano*, 347 S.W.3d at 349. "The trial court in a divorce case has the opportunity to observe the parties on the witness stand and to evaluate their credibility, and the reviewing court may not impose its own opinions of credibility contrary to those of the fact finder." *Dewalt v. Dewalt*, No. 14-06-00938-CV, 2008 WL 1747481, at *2 (Tex. App.—Houston [14th Dist.] Apr. 17, 2008, no pet.) (mem. op.) (citing *Murff v. Murff*, 615 S.W.2d 696, 700 (Tex. 1981); *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)). The trial court does not abuse its discretion if its decision is based on conflicting evidence and some evidence of a substantive and probative character supports the decision. *See In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998); *Swaab*, 282 S.W.3d at 525.

In her sole issue, Connie contends the trial court abused its discretion by incorrectly valuating the resort at $1,600,000 instead of $2,494,000 because the evidence is legally and factually insufficient to support the finding. Apparently, Connie recognizes this valuation did not affect the amount each party was awarded relative to the resort because the court

ordered that it be sold and the proceeds shared equally, regardless of the sales price. Nevertheless, Connie contends the entire division of marital property was not just and right as a result of the purportedly errant valuation. Specifically, Connie asserts that James was awarded a "disproportionately" greater share overall of the parties' property but a lesser share of their debts. Connie emphasizes she was the party solely responsible for operating the resort during the couples' three-year separation. Therefore, Connie suggests that, by undervaluing the resort, the court deprived Connie of "equitable credit" for her efforts in enhancing its value.

Assuming, without deciding, that Connie preserved her complaint for appellate review, we conclude the trial court did not abuse its discretion by valuating the property at $1,600,000 because some evidence of a substantive and probative character supports the finding. For the following reasons, Connie contends evidence of the $2,494,000 figure was "overwhelming" but no more than a scintilla of evidence supported the $1,600,000 figure: (1) an appraisal showed the value at $2,494,000; (2) James made a bare, unsupported assertion in his inventory that the value was $1,600,000; (3) James testified he "agreed" and "was comfortable" with the appraised value of $2,494,000; and (4) Connie was much more knowledgeable about the resort because of her sole responsibility for the property during the separation.

Connie indeed presented an appraisal for $2,494,000; however, it was performed almost three years before trial. Additionally, James did not testify *at trial* that he "agreed" and "was comfortable" with this appraised value. Rather, James acknowledged that he had agreed with the $2,494,000 figure when he testified by deposition several months before trial. At the time of his deposition, James had not reviewed any other appraisal; thus, he originally listed $2,494,000 on his inventory. At trial, James testified that he no longer believed the value was $2,494,000 and listed $1,600,000 on his most recent amended inventory because he was informed within several weeks before trial of another appraisal. James explained that he discovered this appraisal and obtained a copy only

4

because Connie mentioned it relative to her attempt to procure another loan for the property. We recognize James did not directly state that the fair market value in the more recent appraisal was $1,600,000. However, as Connie acknowledges, the clear import of James's testimony was that his $1,600,000 figure was based on the appraisal.

Connie suggests that James was not competent to opine on the value of the resort because he lacked familiarity with its operation. James acknowledged that he wanted to sell the resort when the couple separated because "it was not doing well" but Connie refused, so James told her to assume responsibility for its operation and he had not visited the property for several years before trial. However, for approximately seventeen years before their separation, the couple jointly operated the resort and visited there regularly, and, at trial, James was still able to describe the nature and condition of the resort. Moreover, James indicated he was familiar with the financial situation of the resort at the time of trial and testified that "it doesn't make money," the couple was incurring further debt by infusing money into the property, and it was "not a good business proposition." Nevertheless, irrespective of whether James possessed sufficient knowledge to opine on the value, he indicated his figure was based on a more recent appraisal—not simply his opinion.

Connie emphasizes that this appraisal was not introduced at trial. However, Connie did not object, such as on hearsay grounds, to James's testimony regarding this appraisal. In fact, Connie's counsel elicited the testimony by asking James why the value changed in his inventory. Further, even Connie acknowledged that there had been a more recent appraisal. Accordingly, the trial court was free to consider James's testimony as some evidence regarding the value of the resort at the time of trial.

We acknowledge, as asserted by Connie, that the $2,494,000 appraisal showed a detailed analysis whereas there was no such analysis by which to judge the $1,600,000 figure because the more recent appraisal was not introduced at trial. However, the trial court was free to weigh this factor against the fact that Connie's trial testimony adopting

5

the $2,494,000 figure was impeached. Specifically, Connie acknowledged that, during her deposition several months before trial, she testified the value of the resort was $1,100,000—an even lower figure than subsequently assigned by James and adopted by the trial court. When asked in the deposition how she arrived at $1,100,000, Connie replied, "[t]he value of the [resort] has gone down because the market is not good and our occupancy is horrible." At trial, Connie did not adequately explain why she decided to claim the $2,494,000 figure again, other than expressing the $1,100,000 figure was "just my opinion."

However, "[g]enerally, a property owner is qualified to testify to the value of her property even if she is not an expert and would not be qualified to testify to the value of other property." *Reid Road Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 852–53 (Tex. 2011) (citing *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984)). "The rule is based on the presumption that an owner will be familiar with her own property and know its value." *Id.* at 853. The rule may be applied in the present case although the resort is corporate property because Connie is an officer in a managerial position with duties related to the property. *See id.* at 854–55. Further, although the party typically relying on the "Property Owner Rule" would likely be the proponent of the opinion, we find no reason the rule may not be applied to Connie's opinion testimony although it was used by James for impeachment purposes. Therefore, Connie's emphasis on her familiarity with the property was actually a factor negating the $2,494,000 figure because the trial court could consider her previous "opinion" that the property was no longer worth $2,494,000 as inconsistent with her trial testimony. In fact, Connie agreed at trial that the resort is "in pretty dire financial straits." Consequently, contrary to Connie's suggestion, the $2,494,000 appraisal and her trial testimony were not conclusive regarding the value of the resort.

Moreover, in its Findings of Fact and Conclusions of Law, the trial court recited, "Connie's testimony on many issues was not credible." Accordingly, as sole judge of

6

witness credibility, the trial court was free to consider other factors negating Connie's credibility when deciding whether to adopt her proposed value for the resort.

Finally, Connie cites *Vazquez v. Vazquez*, 292 S.W.3d 80 (Tex. App.—Houston [14th Dist.] 2007, no pet.), *In re Marriage of Brown*, 187 S.W.3d 143 (Tex. App.—Waco 2006, no pet.), and *Wilson v. Wilson*, 132 S.W.3d 533 (Tex. App.—Houston [1st Dist.] 2004, pet. denied), in which courts reversed marital-property divisions for lack of supporting evidence. However, Connie's reliance on these cases is misplaced. In *Vasquez*, the wife testified merely that her proposed final division was "fair and equitable," but the record did not reflect any specifics regarding the nature or value of the property or debts; and in the husband's appeal, the wife actually conceded there was insufficient evidence to support the property division as just and right. *See* 292 S.W.3d at 85. In *Brown*, the trial court awarded the wife 100% of the community estate based on very general evidence regarding the estate, a "sketchy" listing of assets, and no discussion regarding the value of assets, outstanding debts, and other relevant considerations. *See* 187 S.W.3d at 148. In *Wilson*, the evidence was sparse and inconsistent regarding the value of the entire community estate, the wife failed to identify any community assets except a few items for which she generally provided values, and she did not identify what assets she characterized as "the rest of the property" although she requested that it be awarded to her husband and she obtain an equivalent money judgment. *See* 132 S.W.3d at 537–38. In contrast to these cases, the spouses in the present case presented testimony regarding the value of the sole asset at issue on appeal and the rest of their marital estate.

In summary, the trial court was presented with the following: Connie's proffered appraisal of $2,494,000, with supporting analysis, performed three years before trial, her opinion several months before trial that the value had declined to $1,100,000, and her trial testimony again adopting $2,494,000; versus James's agreement with the $2,494,000 figure several months before trial, followed by his trial testimony advancing a $1,600,000 figure based on a more recent appraisal, albeit without supporting analysis. Under these circumstances, we cannot conclude the trial court abused its discretion by valuating the

7

property at $1,600,000. *See Smith v. Grayson*, No. 03-10-00238-CV, 2011 WL 4924073, at \*11–12 (Tex. App.—Austin Oct. 12, 2011, pet. dism'd) (mem. op.) (holding trial court did not abuse its discretion in adopting value of spouses' real property as presented in taxing authority's appraisal, rather than wife's opinion or real estate appraiser's opinion, because valuation was based on conflicting evidence, with some probative evidence supporting the finding).

Accordingly, we overrule Connie's sole issue and affirm the trial court's divorce decree.


/s/    Charles W. Seymore
       Justice


Panel consists of Justices Seymore, Boyce, and Mirabal.[1]

---

[1] Justice Margaret Garner Mirabal sitting by assignment.