

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00358-CV

---

Crystal Flack, Appellant

v.

Michael Mendoza, Sr., Appellee

---

On Appeal from the 353rd District Court
Travis County, Texas
Trial Court No. D-1-FM-22-008296

---

## MEMORANDUM OPINION[1]

In this divorce case, Appellant Crystal Flack contends the trial court abused its discretion

by awarding a disproportionate share of the community estate to Appellee Michael Mendoza, Sr.

We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Flack and Mendoza were married for 23 years. They have no children together. Flack filed

a petition and amended petition for divorce in November 2022. Mendoza filed a counterpetition

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Third Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

the same month. Both alleged insupportability and adultery as grounds for divorce, and Mendoza additionally alleged cruelty. Both sought to confirm their individual property, and both sought to be awarded a disproportionate share of community property. Both also sought reimbursement for community funds expended by the other party for the benefit of that party or that party's separate estate. While Flack and Mendoza were both initially represented by counsel, Flack's counsel was permitted to withdraw before trial and Flack proceeded pro se. A bench trial was held on July 10, 2024. Flack and Mendoza were the sole testifying witnesses.

The couple owned a home together. Flack estimated they had about $196,000 in equity in the home, while Mendoza estimated they had about $169,000. Both Flack and Mendoza were receiving VA disability payments—Flack in the amount of $4,256 per month and Mendoza in the amount of $2,165 per month. Flack and Mendoza also both had federal pension accounts. While the account balances were unknown, Flack worked for about 11 years for the United States Postal Service and spent 8 years in the military, and Mendoza worked for 28 years for the Postal Service and spent 12 years in the military. There was testimony that Mendoza's military service was reflected in his pension account, but not whether the same was true for Flack. Flack and Mendoza each also had a 401K Thrift Savings Plan account. As of December 2022, Mendoza's account had $118,000 in it. Flack's account had between $34,000 to $40,000 in it, but she withdrew the funds and lost them in TD Ameritrade stock trading, leaving a current balance of $4.78 in the trading account. Mendoza testified that he did not agree with Flack's decision to withdraw the funds in her savings account and use them to engage in trading stocks and advised against it.

As to other financial matters, Mendoza testified that Flack withdrew $54,000 from a joint bank account and deposited these funds in a separate account shortly before filing for divorce, that these funds came from his disability compensation, and that the funds were never reimbursed. In addition, for 2022, the parties' joint TD Ameritrade account, which was controlled solely by Flack,

2

reflected an opening balance of $0.43, $52,770 in deposits, $256,078.45 in losses, and a closing balance of $29,646.50.

As to fault, Mendoza admitted that he had an affair "over 16, 18 years ago," but stated he and Flack were able to reconcile and had a happy marriage afterwards. There was no testimony that Flack had an affair.

As to cruelty, Mendoza testified that at one point he had to temporarily leave the home and rent an apartment because Flack would "constantly just come at [him] for hours," and be on the phone "for hours" with another man:

> [E]very time I come home my wife would constantly just come at me for hours, for hours, wouldn't get no sleep, couldn't get no sleep. I get up at 4:00 o'clock in the morning, that's when I start my day, go to work. She just for hours—and she be on the phone talking with another person, Williams, I think that's his name, for hours, talking about me, talking about my personal business for hours. I was stressed and I had to leave.

.   .   .

> [S]he's always talking to him by phone every day, and they always talking. They was trying to do some business, talking -- they did a lot of stuff, they talked about a lot of things over the phone. I mean when I'm home.

Mendoza testified that he thought Williams was "a big influence on [Flack] divorcing [him]," and that the marriage would not have broken down if Williams had not become involved.

Mendoza further testified that on November 18, 2022, Flack permanently moved out:

Q. And when did your wife move out?

A. November 18, 2022.

Q. And how did you learn that she moved out?

A. I came home, excuse me, when I came home I knew she was gone. That's when everything was gone. She load up, I mean everything was gone. She had her boxes packed, I didn't know how she was going to leave but I didn't think she was going to leave. But, yeah, November 18th when I came home from work that evening that's when I found out she left.[2]

---

[2] Without further explanation, Flack characterized her leaving the home as "fleeing."

After Flack moved out, Mendoza was left to pay the mortgage and household expenses by himself. When asked if he had any hope of reconciling with Flack, Mendoza answered:

> I did when she first left. I waited a week, then I text her and I sent her an email and told her that I retired, I do -- I want you back, and she never responded to me. I didn't hear from her no more in over a year. That's when I next heard from her. And at that time I gave it up, I spent too much money into this divorce. So it was something we both wanted.

At the conclusion of the hearing, the trial court granted the parties a divorce and took the property division issues under advisement. On August 16, 2024, the trial court signed a final decree of divorce based on the ground of insupportability. The decree awarded to each party the following items in that party's possession or control or bearing that party's name: household furniture and furnishings; personal effects; vehicles; cash and bank accounts; life insurance; brokerage accounts; profit-sharing, retirement, and other employee benefits; and IRAs, annuities, and pensions. The joint TD Ameritrade account was awarded to Flack, and a joint University Federal Credit Union account was awarded to Mendoza. Flack was also awarded a Cadillac in Mendoza's possession. The home was ordered to be sold, with Mendoza to pay the mortgage, taxes, insurance, and other household expenses pending the sale, and with Mendoza to receive the first $30,000 in proceeds,[3] the remainder to be split evenly between the parties. The trial court made a finding that this distribution reflected a "just and right division of the parties' marital estate, having due regard for the rights of each party." Neither party requested findings of fact and conclusions of law. This appeal followed.

## II. ISSUES ON APPEAL

On appeal, Flack argues that the trial court abused its discretion in "awarding a property division that included a disproportionate share of the [community] estate being awarded to

---

[3] The decree states that Mendoza was awarded this amount "due to the lack of good faith participation in the case by [Flack] in addition to her refusal to sign the motion to withdraw of her counsel after discharging her counsel."

4

[Mendoza]."

### III. STANDARD OF REVIEW AND APPLICABLE LAW

In granting a divorce, the trial court must "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code Ann. § 7.001. We review a trial court's division of community property for an abuse of discretion. *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988); *Paez v. Rodriguez*, No. 03-24-00731-CV, 2025 WL 2325163, at *2 (Tex. App.—Austin Aug. 13, 2025, no pet.) (mem. op.). A trial court abuses its discretion if it rules arbitrarily, unreasonably, without regard for guiding rules or principles, or without supporting evidence. *Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 482 (Tex. 2022).

In a bench trial in which no findings of fact and conclusions of law are filed, we infer all findings of fact necessary to support the judgment. *Ly v. Nguyen*, No. 03-23-00535-CV, 2025 WL 2677889, at *2 (Tex. App.—Austin Sept. 19, 2025, no pet.) (mem. op.) (citing *Rosemond v. Al–Lahiq*, 331 S.W.3d 764, 766–77 (Tex. 2011) (per curiam)). Where, as here, the reporter's record is filed, these implied findings are not conclusive, and the appellant may challenge the legal and factual sufficiency of the evidence to support them. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83–84 (Tex. 1992). The absence of express findings of fact makes Flack's task a challenging one; the appellant's burden to show that a division of property involved an abuse of discretion is a high one and more difficult when the record contains no findings as to the value of the estate assets. *Ly*, 2025 WL 2677889, at *6.

Under an abuse-of-discretion standard, the "legal and factual sufficiency of the evidence are not independent grounds of error but instead are factors used to determine whether the trial court abused its discretion." *Duarte-Hernandez v. Rodriguez*, No. 03-24-00114-CV, 2025 WL 1477185, at *6 (Tex. App.—Austin May 23, 2025, no pet.). We first consider whether the trial

5

court had sufficient information on which to exercise its discretion and, if so, whether it erred in exercising its discretion. *Id*. Traditional sufficiency review comes into play under the first step.[4] *Id*. If we reach the second step, we determine whether, based on the evidence, the trial court's decision was reasonable. *Id*.

The trier of fact "is the sole judge of the credibility of witnesses and the weight to be given their testimony." *Duarte-Hernandez*, 2025 WL 1477185, at *7. We thus "may not pass upon the witnesses' credibility or substitute our judgment for that of the fact finder." *Id.*

A trial court has wide discretion in making a just-and-right division of community property. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998); *Paez*, 2025 WL 2325163, at *2. To involve an abuse of discretion, the division of property must be "manifestly unfair." *Paez*, 2025 WL 2325163, at *2. "We presume on appeal that the trial court correctly exercised its discretion when dividing property in a divorce proceeding, and the appellant bears the burden to show from the record that the division was so disproportionate, and thus unfair, that it constitutes an abuse of discretion." *Id*.

## IV. ANALYSIS

Flack argues that "because the trial court did not rely on fault-based grounds and granted a no-fault divorce, it was in error to award [Mendoza] a disproportionate share of the community estate"; more specifically, "[Mendoza's] retirement account was a community asset and should

---

[4] In reviewing legal sufficiency, "we view the evidence in the light most favorable to the [judgment], crediting favorable evidence when [the trier of fact] could do so and disregarding contrary evidence unless [the trier of fact] could not." *Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 794 (Tex. 2020). "Evidence is legally insufficient . . . when (1) evidence of a vital fact is absent, (2) rules of law or evidence bar us from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact." *Bos v. Smith*, 556 S.W.3d 293, 299–300 (Tex. 2018).

In reviewing factual sufficiency, we "consider and weigh all of the evidence," and will reverse "only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

have been divided equally," rather than being awarded solely to Mendoza.[5]

In support of this position, Flack cites the Beaumont Court of Appeals' decision in *Phillips v. Phillips* for the proposition that when a divorce is granted solely on the ground of insupportability, "evidence of 'fault' becomes irrelevant as an analytical construct and may not be considered by the trial court in its 'just and right' division of the community estate." 75 S.W.3d 564, 572 (Tex. App.—Beaumont 2002, no pet.). However, this aspect of *Phillips* has been rejected by the Austin Court of Appeals. *See Paez*, 2025 WL 2325163, at *3 ("[A]lthough the trial court granted the divorce on no-fault grounds, [in dividing the parties' estate,] it could still consider Edith's testimony concerning the physical and emotional abuse she observed in her parents' marriage."); *Cyree v. Cyree*, No. 03-21-00319-CV, 2022 WL 17835215, at *4 (Tex. App.—Austin Dec. 22, 2022, no pet.) ("That the trial court granted the parties a no-fault divorce, however, is not inconsistent with and did not preclude it from considering William's admitted extramarital affair in its division of the marital estate."); *see also Cyree* at *4 (collecting cases, including *Mohindra v. Mohindra*, No. 14-06-00056-CV, 2007 WL 3072057 at *2, (Tex. App.—Houston [14th Dist.] Oct. 23, 2007, no pet.) (mem. op.) ("Courts, including this one, have acknowledged that fault may be considered [as factor in dividing marital estate] even in the context of a no-fault divorce."); *In re Brown*, 187 S.W.3d 143, 145–46 (Tex. App.—Waco 2006, no pet.) (concluding that trial court has discretion to consider "proven fault" in division of property regardless of basis for granting divorce)).

Here, as to fault, the trial court could have considered Mendoza's testimony that Flack would "constantly just come at him for hours," and "be on the phone talking with another [man], Williams . . . for hours, talking about [Mendoza], talking about [Mendoza's] personal business," to the point where Mendoza was so stressed he had to leave the home and rent an apartment. *See*

---

[5] Flack does not complain about any other aspect of the trial court's distribution of property.

Tex. Fam. Code Ann. § 6.002 (providing that cruelty is a ground for divorce); *Newberry v. Newberry*, 351 S.W.3d 552, 557 (Tex. App.—El Paso 2011, no pet.) ("A spouse's conduct rises to the level of cruel treatment when his or her conduct renders the couple's living together insupportable." "'Insupportable' means 'incapable of being borne, unendurable, insufferable, intolerable.'"); *see also McCullough v. McCullough*, 36 S.W.2d 459, 462 (Tex. [Comm'n App.] 1931) (cruelty is not confined to physically violent behavior); *Lindsey v. Lindsey*, 228 S.W.2d 878, 882 (Tex. App.—Amarillo 1950, no writ) ("Cruel treatment" also includes injury to a party's feelings and sensibilities); *Gentry v. Gentry*, 394 S.W.2d 544, 546 (Tex. App.—Corpus Christi 1965, no writ) (cruelty includes "willful persistent infliction of unnecessary suffering, whether in realization or apprehension, whether of mind or body").

Further, the trial court could have considered Mendoza's testimony about Flack's having moved out of the home, i.e., that on November 18, 2022, "when [Mendoza] came home from work that evening that's when [he] found out she left," and he "didn't hear from her . . . in over a year." *See* Tex. Fam. Code Ann. § 6.005 (providing that leaving a spouse with the intention of abandonment and remaining away for at least a year is a ground for divorce).

In addition, the trial court could have considered Mendoza's testimony that Flack's retirement account had between $34,000 to $40,000 in it, but she withdrew these funds, despite his request not to, and lost them in TD Ameritrade stock trading; that Flack withdrew $54,000 from a joint bank account and deposited these funds in a separate account shortly before filing for divorce, that these funds came from Mendoza's disability compensation, and that the funds were never reimbursed; and that, for 2022, the parties' joint TD Ameritrade account, which was controlled solely by Flack, reflected an opening balance of $0.43, $52,770 in deposits, $256,078.45 in losses, and a closing balance of $29,646.50. *See Schlueter*, 975 S.W.2d at 589 ("Trial courts . . . have wide discretion and are allowed to take many factors into consideration in making a just and

8

right division, including wasting of community assets.") (internal citation omitted); *Duarte-Hernandez*, 2025 WL 1477185, at *9 ("Among a myriad of factors the trial court may consider when making a just and right division, two are (1) a spouse's dissipation of the community estate and (2) any misuse of community property.") (citing *Dailey v. Dailey*, No. 02-12-00097-CV, 2013 WL 105667, at *5 (Tex. App.—Fort Worth Jan. 10, 2013, no pet.) (mem. op.)).

Furthermore, a trial court is not required to divide community property equally. *See Paez,* 2025 WL 2325163, at *2 ("[E]ven when a divorce is not granted on fault-based grounds, 'the community property need not be equally divided.'" (citing *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981)). "If there is a reasonable basis for an unequal division of the property in the record, the trial court has not abused its discretion." *Id*.; *see also Murff*, 615 S.W.2d at 700 (observing that "[m]athematical precision in dividing property in a divorce is usually not possible" and that "[w]ide latitude and discretion rests in these trial courts and that discretion should only be disturbed in the case of clear abuse").

In addition, a trial court may consider a host of no-fault factors in dividing a community estate, including "the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estate, and the nature of the property." *Paez*, 2025 WL 2326163, at *2 (citing *Murff*, 615 S.W.2d at 699). In exercising its discretion, the trial court "is empowered to use its legal knowledge and its human understanding and experience" and "has the opportunity to observe the parties on the witness stand, determine their credibility, [and] evaluate their needs and potentials, both social and economic." *Murff,* 615 S.W.2d at 698–99.

Here, the trial court could have considered the parties' relative financial condition and the extent of their separate estates (Flack's disability payment was $4,256 per month and Mendoza's

was $2,165 per month). In addition, the trial court could have considered Mendoza's testimony that he was left to pay the mortgage and household expenses by himself after Flack moved out on November 18, 2022, as well as the fact that he was being ordered to continue to do so until the home was sold.

Absent express fact findings, we must infer all fact findings supported by evidence in favor of the trial court's division of community property. *Duarte-Hernandez*, 2025 WL 1477185, at *10. Accordingly, we conclude Flack did not show that by awarding Mendoza his retirement account, the trial court divided the parties' estate in a way that was manifestly unjust. We overrule Flack's sole issue on appeal.

## V. Conclusion

For the reasons stated above, we affirm the trial court's final decree of divorce.

LISA J. SOTO, Justice

March 26, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.