# IN THE SUPREME COURT OF TEXAS

═══════════

No. 16-0328

═══════════

AMANDA BRADSHAW, PETITIONER,

v.

BARNEY SAMUEL BRADSHAW, RESPONDENT

═══════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SIXTH DISTRICT OF TEXAS

═══════════════════════════════

JUSTICE DEVINE, joined by JUSTICE GUZMAN, concurring.

A trial court must have some understanding of the extent and value of the community estate before it can make an equitable division. When the underlying record fails to provide this basic information, any division of property must lack a reasonable basis and be perceived as arbitrary. Because the record here does not provide sufficient information about the community estate for the trial court to make an equitable division, I agree that the case must be remanded to the trial court for further proceedings.

**I**

"In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE § 7.001. A number of factors may be relevant to the determination of a "just and right" division. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981).

A non-exclusive list includes such factors as the parties' disparity in income or earning capacity, the parties' capacities and abilities, the parties' relative needs and financial condition, the parties' relative fault in ending the marriage, the benefits the party without fault would have received had the marriage continued, as well as the parties' relative physical conditions, future business prospects, disparity in age, separate estates, education, and the nature of the property to be divided. *Murff*, 615 S.W.2d at 699; *Young v. Young*, 609 S.W.2d 758, 762 (Tex. 1980).

The trial court has wide discretion in balancing these factors and determining the proper division. *Murff*, 615 S.W.2d at 698. Although the marital estate need not be divided equally, the division must be equitable. *Chafino v. Chafino*, 228 S.W.3d 467, 473 (Tex. App.—El Paso 2007, no pet.). If the trial court makes an unequal division, it must have a reasonable basis for doing so. *Id.*

An appellate court should reverse the trial court's division only when the trial court abuses its discretion. *Murff*, 615 S.W.2d at 698. Additionally, when the trial court does not file its findings and conclusions, its distribution of the estate must be affirmed if there is any basis in the record to support its decision. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

In reviewing the division of a marital estate, the appellate court may not substitute its own discretion for that of the trial court. *See McKnight v. McKnight,* 543 S.W.2d 863, 866 (Tex. 1976). An abuse of discretion requires something more than that the trial court should have reached a different result. *Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 371 (Tex. 2014). Instead, an

2

abuse of discretion occurs when the trial court "acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003).

A trial court can act arbitrarily and thus abuse its discretion in several ways. For example, a trial court abuses its discretion when it exercises discretion it does not legally possess or fails to exercise discretion when it must. *Landon v. Jean-Paul Budinger, Inc.*, 724 S.W.2d 931, 937-38 (Tex. App.—Austin 1987, no writ). A court also acts in an arbitrary manner when it attempts to exercise its discretion without sufficient information to make a rational decision. *Id*. at 938. Finally, a court abuses it discretion when it exercises its discretion in a manner that lacks any support in the record. *Id*. at 938-39; *See also In re Marriage of Brown*, 187 S.W.3d 143, 148 (Tex. App.—Waco 2006, no pet.)

## II

The court of appeals' conclusion that the trial court did not abuse its discretion is not grounded in the evidence but on our admonition that a fair-and-just division "should not be a punishment." 487 S.W.3d 306, 312 (Tex. App.—Texarkana 2016) (quoting *Young*, 609 S.W.2d at 762). The court reasoned that the trial court did not abuse its discretion by giving Amanda 80 percent of the Florey Lake property because awarding her any more than that could be viewed as punishing Barney. *Id*. at 312. The court thus dismissed Amanda's argument that the trial court abused its discretion in dividing the Florey Lake property by assuming that awarding more than 80 percent to Amanda was outside the range of choices permitted by law.

I disagree with this premise. Neither the Family Code nor our decision in *Young* establishes a threshold beyond which an award must be deemed a punishment as a matter of law. In *Young*, we

3

merely stated that a trial court may not punish the spouse at fault when dividing marital property. *Young*, 609 S.W.2d at 762. Thus, a trial court that seeks to punish a spouse when dividing property has "arrived at its determination in violation of [a] general rule[] of law" and, hence, abused its discretion. *Landon*, 724 S.W.2d at 939. But *Young* does not establish a range of choices permitted by law or a presumption that an award outside that range is a punishment. *See Young,* 609 S.W.2d at 762. Although relatively rare, other courts of appeal have affirmed divisions where one spouse received more than 80 percent of the property. *See, e.g., Ohendalski v. Ohendalski*, 203 S.W.3d 910, 912 (Tex. App.—Beaumont 2006, no pet.) (affirming award of 81 percent of the community estate to wife); *Wright v. Wright*, 65 S.W.3d 715, 716 (Tex. App.—Eastland 2001, no pet.) (affirming award of 88 percent of the community estate to wife). Neither does the Family Code create a range of acceptable awards; it simply instructs that the property division be just and right. TEX. FAM. CODE § 7.001. If the evidence supports a disproportionate division of the marital estate, a trial court must order a division that is just and right, guided by that evidence.

The record here supports a disproportionate, fault-based award of property to Amanda. Even so, Amanda complains that the disproportionate award does not go far enough because no evidence supports Barney's award of a 20 percent interest in the Florey Lake property. In short, Amanda argues that the property division, though disproportionately in her favor, still is not "just and right." *Id*. The argument requires us to examine the entire record to determine whether the trial court had sufficient information on which to exercise its discretion and whether evidence exists to support the trial court's decision.

4

Although the home where Amanda and Barney began their marriage was Amanda's separate property and an insurance settlement for its loss was used to purchase the Florey Lake property, the court of appeals nevertheless determined that Amanda failed to adequately trace these funds or rebut the community-property presumption that attaches to property purchased during the marriage. 487 S.W.3d at 310-11. The record reflects that Amanda's insurance company settled her claim by paying approximately $166,000 for the house, $60,000 for its contents, and another $13,000 for the family's additional living expenses following the loss. About $40,000 of the settlement was used to pay off the mortgage company's lien, and Amanda sold the property after that. Amanda used $125,000 of the insurance settlement to buy the Florey Lake property outright. The sale closed in June 2012, about nineteen months after the marriage. Amanda took title to the property solely in her name. The rest of the insurance money was used to furnish the new home and pay other expenses.

Barney claims to have a community interest in both the insurance proceeds and the Florey Lake property. He testified about contributing a mattress, some furniture he did not identify, and a remarkable five televisions to the house that burned. Moreover, Amanda testified that during the marriage she paid the home's mortgage of $450 a month from her earnings. The couple lived in the house for about a year and so approximately $5400 of community funds were expended on the mortgage during this period. During the marriage, Barney received social security disability payments, but did not testify about any other earnings. He did, however, testify about making plumbing repairs to Amanda's first house and to providing assistance with the construction of an addition to the Florey Lake property. It was also undisputed that the insurance-settlement check was

made payable to Amanda and Barney even though the insured home was Amanda's separate property.

The last known value of the Florey Lake property was its sales price of $125,000. Barney's awarded interest in the property is thus worth perhaps $25,000. Assuming the addition to the Florey Lake property added to the home's value, Barney's interest is worth even more. Given the community contribution, this seems to be an exceedingly generous award to Barney even before considering his fault or other factors supporting a disproportionate award.

When Barney's fault is factored into the analysis of a just-and-right division, what seems at first blush to be a generous valuation of Barney's community interest becomes even more untenable. In *Young*, we noted a concern that the trial court not delve into every "bicker, nag, and pout" between the parties when examining fault as a relevant consideration. *Young*, 609 S.W.2d at 762. Fault implicates reprehensible conduct, not a disagreeable personality. For example, James Young deserted his wife and left her with the sole responsibility of raising their son. *Id*. at 759. We concluded that this reprehensible act was certainly worthy of consideration when dividing the marital estate. *Id*. at 762. In retrospect, Amanda and her daughters would, in all probability, have considered it a blessing had Barney merely abandoned the family. Instead, he stayed, causing his family and others unspeakable physical and emotional harm. It is difficult to imagine a situation where considering fault in the division would be more appropriate.

Apart from Barney's fault, other relevant factors such as the nature of the property and the parties' relative needs support a disproportionate award to Amanda. *Murff*, 615 S.W.2d at 699. Ironically, Barney has been awarded an interest in the very asset that facilitated his criminal activity.

6

Moreover, the parties' financial obligations and, hence, their needs, are vastly different. Amanda has two daughters to shelter and support and needs the home. Barney, on the other hand, is incarcerated for sixty years; the state has made arrangements for his room, board, and other necessities for his foreseeable future. *Bradshaw v. State*, 466 S.W.3d 875, 877 (Tex. Crim. App.—Texarkana 2015, pet. ref'd). He has no need of the Florey Lake property and has stated that he would prefer to have his community interest paid in a lump sum. But the interest awarded to him in the Florey Lake property has no apparent relationship to his community interest, particularly if the trial court's intent was to factor in Barney's fault.

Another significant factor is the value of Amanda's separate property that was either contributed to or commingled with the community estate. Courts may consider the amount of separate property consumed or contributed during the marriage when dividing the marital estate. *See, e.g., Monroe v. Monroe*, 358 S.W.3d 711, 717 (Tex. App.—San Antonio 2011, pet. denied) (concluding that community estate would have been minimal but for husband's contribution of separate property during the marriage); *Dickson v. Dickson*, 544 S.W.2d 200, 204 (Tex. Civ. App.–Austin 1976, writ dism'd w.o.j.) (giving a disproportionate award to the wife because "much of [the wife's] separate property was consumed in supporting the family," and "the community estate profited greatly from transactions funded entirely by [the wife's] separate property").

Barney, however, argues that his interest in the Florey Lake property may be justified by the substantial work he put into repairing and improving both houses. His argument is in the nature of a reimbursement claim, but the record contains no evidence of the values involved. Barney merely testified that he repaired some plumbing at Amanda's first house and that he helped to make an

7

addition to the second house. He provides no more detail than that. Nor does he offer any evidence of either the cost of those repairs or any enhancement to the underlying property value.

The standard of review is for abuse of discretion, which in family law cases "overlaps with the traditional sufficiency-of-evidence standards of review." *Roberts v. Roberts*, 531 S.W.3d 224, 231 (Tex. App.—San Antonio 2017, pet. denied). Because of this, our courts of appeals have generally "engage[d] in a two pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion; and (2) Did the trial court err in its application of discretion?" *Lindsey v. Lindsey*, 965 S.W.2d 589, 592 (Tex. App.—El Paso 1998, no pet.); *accord Roberts*, 531 S.W.3d at 231, *Beshears v. Beshears*, 423 S.W.3d 493, 499 (Tex. App.—Dallas 2014, no pet.); *Iliff v. Iliff*, 339 S.W.3d 126, 134 (Tex. App.—Austin 2009), aff'd, 339 S.W.3d 74 (Tex. 2011); *Swaab v. Swaab*, 282 S.W.3d 519, 525 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.).

For the first prong, a trial court abuses its discretion in dividing the community estate without knowledge of its extent and proof of its value. *See, e.g.*, *In re Marriage of Brown*, 187 S.W.3d at 147-48; *Barnard v. Barnard*, 133 S.W.3d 782, 789 (Tex. App.—Fort Worth 2004, pet. denied); *Sandone v. Miller-Sandone*, 116 S.W.3d 204, 207-08 (Tex. App.—El Paso 2003, no pet.). "Without the ability to determine the size of the community pie, [a court] can make no determination that the slices awarded to each spouse were just and right." *Sandone*, 116 S.W.3d at 207-08. Although the trial court held four hearings over the course of the proceedings below, only the middle two included any evidence about the parties' property interests. And even then, those hearings primarily concerned tracing insurance proceeds from the destruction of Amanda's separate property into the

8

Florey Lake property to determine its proper characterization. The parties here have fought over the Florey Lake property's characterization and the community's interest therein to the exclusion of other assets. Along the way, the parties have alluded to other community assets, such as vehicles, tools, televisions, accounts, and furnishings, without ever providing an inventory. Apparently, Florey Lake is the parties' primary asset but the community's interest is not developed in the record. The circumstances are reminiscent of those in *Marriage of Brown* wherein the court of appeals held the trial court did not have adequate information on which to divide the estate and thus no reasonable basis for its award. *In re Marriage of Brown*, 187 S.W.3d at 148. There, "a sketchy listing of community assets" and "no discussion of the net value" did not provide the trial court with any reasonable basis on which to divide the community estate. *Id*. As in this case, the husband was in prison for child molestation, and fault played a role in the trial court's decision to award 100 percent of the community estate to the wife. *Id*. at 146-47. The court of appeals concluded that the trial court's division might be just and right but that the record was inadequate to make that determination. *Id*. at 148.

Here, the information available to the trial court was even more limited. Not even a sketchy inventory exists in the record. Clearly, the lion's share of Florey Lake's value is attributable to the destruction of Amanda's separate property, but some undefined part of the insurance proceeds used to purchase and furnish that property was burdened by the community. Moreover, Barney claims that his community efforts added value to the Florey Lake property, although no evidence exists in this record as to what that additional value might be. A trial court cannot divide the marital estate

9

equitably without evidence of the extent of the community estate or its value. *Gonzalez v. Gonzalez*, 331 S.W.3d 864, 869 (Tex. App.—Dallas 2011, no pet.).

**III**

JUSTICE BOYD complains that I read too much into Amanda's abuse-of-discretion argument because she "has never once complained about the sufficiency of the evidence." *Post* at ___. I respectfully disagree. Amanda submits in her briefing that sufficiency of the evidence is not an independent ground of reversible error. Instead, she claims it is a factor relevant to assessing whether the trial court abused its discretion, that is, whether the trial court had sufficient evidence on which to exercise its discretion. JUSTICE BOYD further exclaims that it "is simply not true" to suggest that Amanda's argument includes a no-evidence complaint because "she never argues that 'no evidence supports' the award of some interest to Barney." *Post* at ___. Again I disagree. Amanda expressly argues that "the record is totally silent as to any rationale" for awarding Barney any interest in the Florey Lake property. Moreover, JUSTICE BOYD reads Amanda's statement that the record "contains sufficient evidence upon which the trial court could determine the division of property" out of context to suggest an inconsistency with her abuse-of-discretion contention. *Post* ___. In context, Amanda's statement about the evidence refers to the testimony of her daughters, herself, and Barney regarding Barney's fault, which Amanda interprets as an overriding factor, sufficient by itself to sustain an award of the entire Florey Lake property to her. While I disagree that this factor is controlling to the exclusion of all others, I likewise disagree with JUSTICE BOYD's characterization of the statement as Amanda abandoning the evidentiary concerns that are otherwise apparent in her abuse-of-discretion complaint.

A just-and-right division of community property does not have to be equal, but it does have to be informed. Thus, a court abuses its discretion when it purports to make an equitable division of the community estate without "sufficient information upon which to exercise its discretion." *Lindsey*, 965 S.W.2d at 592. The court of appeals nevertheless affirmed the trial court's division, assuming that the division was equitable rather than arbitrary and assuming further that a more disproportionate award could have amounted to a penalty. I disagree with both assumptions and join the Court's judgment here remanding the cause to the trial court for further proceedings.

_____
John P. Devine
Justice

OPINION DELIVERED: June 29, 2018

11